520 Eᴀsᴛ 81sᴛ Sᴛʀᴇᴇᴛ Associates, a New York General Partnership, Plaintiff, v Lᴇɴᴏx Hɪʟʟ Hospital et al., Defendants.

Supreme Court, New York County, April 29, 1988

APPEARANCES OF COUNSEL

*Rosenberg & Estis, P. C.,* for plaintiff. *Edmund F. Wolk* for

Lenox Hill Hospital, defendant. *Neil E. Higgins* for Maryann Hederman, defendant. *Berger, Poppe, Janiec & Graziadei* for M. McCarthy and others, defendants.

### OPINION OF THE COURT

EDWARD J. GREENFIELD, J.

Plaintiff, 520 East 81st Street Associates, the owner (Owner) of the building located at 520 East 81st Street, New York, New York, known as the Salem House Condominium (the building), moves for partial summary judgment (CPLR 3212 [e]) declaring that certain of the individually named defendants do not occupy their apartments as their primary residence and further declaring which of the defendants are entitled to lease renewals.

Defendant Lenox Hill Hospital (Lenox Hill) cross-moves for summary judgment (CPLR 3212) dismissing the complaint and declaring that Lenox Hill is entitled to a renewal lease.

Defendant Maryann Hederman separately cross-moves for summary judgment (CPLR 3212) dismissing the complaint and declaring that Lenox Hill is entitled to a lease renewal and that she is entitled to a sublease for apartment 11 N.

Lenox Hill is the tenant of record of 39 rent-stabilized apartments located in the building (the subject apartments) pursuant to two residential renewal leases dated March 9, 1982 between Lenox Hill and the Owner for a term of three years commencing on August 1, 1982 and terminating on July 31, 1985 (the leases). Lenox Hill has been the lessee of these apartments for the past 18 to 20 years.

The individually named defendants are nurses employed by Lenox Hill who sublet the apartments from Lenox Hill.

The Owner failed to give Lenox Hill the requisite notice of intention to renew the leases between 120 and 150 days prior to the end of the lease term (Rent Stabilization Code [9 NYCRR] § 2523.5 [a]), and instead commenced this declaratory judgment action.

The Owner asserts that there are three categories of nurses subletting from Lenox Hill: (1) those continuously in occupancy of their apartments since the commencement of the last renewal leases; (2) those not in occupancy at the commencement of said leases but during the 120-to-150-day "window" period; and (3) those neither in occupancy on the commencement date nor during the window period.

On the basis of this breakdown, the Owner argues that only

the first group of subtenants are primary residents and thus entitled to renewal leases. With regard to the rest, the Owner submits no proof concerning primary residency, such as a tax return, car registration, driver's license or voter's registration indicating another residence. Nor, it may be added, does the Owner as much as suggest that any of the subtenants actually reside elsewhere.

In order to refuse to renew a lease on the grounds of nonprimary residence, the landlord must follow the procedural requirements for obtaining a determination of the tenant's status as a nonprimary resident, which includes giving the tenant notice of landlord's intention not to offer a renewal lease between 120 and 150 days prior to the end of the lease term (Rent Stabilization Code [9 NYCRR] § 2523.5 [a]). Here the Owner concedes that it failed to give such notice. Thus, as the Owner failed to adhere to the statutorily mandated procedure, it is not entitled to a declaration of nonprimary residence and is required to offer a renewal lease *(Golub v Frank,* 65 NY2d 900; *Crow v 83rd St. Assocs.,* 68 NY2d 796).

The Owner asserts, however, that "[a]s between Lenox Hill Hospital and the nurses [i.e., the subtenants], the nurses are entitled to the offer of renewal."

The court rejects Lenox Hill's argument that the Owner is collaterally estopped from making this assertion by virtue of two prior proceedings between Lenox Hill and the Owner by reason of the fact that those prior proceedings did not involve the issues presented herein.

Chapter 940 of the Laws of 1984 amended the Administrative Code of the City of New York and the Emergency Tenant Protection Act to make specific provision for not-for-profit hospitals subletting residential apartments. A review of the legislative history of chapter 940 reveals that Lenox Hill played a key role in introducing the legislation *(see,* Senate debates, L 1984, ch 940). Lenox Hill has long maintained subsidized housing for its medical and nursing staff in various apartment buildings in the vicinity of the hospital, which is located on Park Avenue and East 77th Street in Manhattan. In support of the bill, Lenox Hill urged that safe, convenient, affordable housing for its staff is essential because of the evening shifts they are required to work, and that the not-for-profit hospital's ability to maintain their housing programs would be adversely affected by certain changes wrought by the Omnibus Housing Act of 1983. These changes include the

requirement that it is the named tenant, and not a subtenant, who must maintain the apartment as his or her primary residence, and the limitation on the duration of the sublet to a total of two years. The corrective legislation, chapter 940, specifically excluded not-for-profit hospitals from both of these requirements and further provided, *inter alia,* that the hospital could sublet without the owner's consent. The landlords and owners, who protested passage of the bill, were given a provision for a "vacancy surcharge" of 15% of the previous lease rental if there are no vacancy increases for seven years as compensation for their loss of vacancy allowances.

█ The Owner's argument herein that the subtenant nurses, and not Lenox Hill, are the intended beneficiaries of the legislation and are entitled to the renewal leases is belied by the legislative history and statutory language of chapter 940. It is clear that the not-for-profit hospital is the tenant sought to be protected by the corrective legislation. In addition, subtenants have no right to renew under the Rent Stabilization Law (Administrative Code of City of New York § 26-511 [c] [12] [g]).

Therefore, it is Lenox Hill, the named tenant on the expired renewal leases, which is entitled to renewal leases for the subject apartments, which are to run prospectively from the date executed leases are delivered to the tenant *(Matter of Briar Hill Apts. v Conciliation & Appeals Bd.,* 44 AD2d 816).

The Owner's assertion that chapter 940 is an "unconstitutional discriminatory treatment and a taking without due process" cannot be considered herein because the Attorney-General has not been notified that the constitutionality of the statute was in issue (CPLR 1012 [b]; Executive Law § 71). In any event, the constitutionality argument seems to be wholly meritless.

Defendant Maryann Hederman's cross motion for summary judgment (CPLR 3212) on her counterclaims is denied as a matter of law. As a subtenant, Hederman has no right to a renewal lease under the rent stabilization laws (Administrative Code § 26-511 [c] [12] [g]).

Accordingly, plaintiff's motion for partial summary judgment (CPLR 3212 [e]) is denied in its entirety. Defendant Lenox Hill's cross motion for summary judgment (CPLR 3212) dismissing the complaint and on its first, second and third counterclaims is granted. It is hereby declared that plaintiff is required to offer renewal leases to Lenox Hill as the named

tenant for the subject apartments and plaintiff is directed to deliver said renewal leases to Lenox Hill within 30 days after service of a copy of the order to be settled with notice of entry.

Defendant Maryann Hederman's cross motion for summary judgment (CPLR 3212) is denied in its entirety and her counterclaims are dismissed.