*983 OPINION OF THE COURT
Myriam J. Altman, J.
In this consolidated action,[1] plaintiffs move for summary judgment in the form of a declaration that they are not required to offer renewal leases to defendant Lenox Hill Hospital (Lenox Hill) for six rent-stabilized apartments occupied by Lenox Hill employees. Plaintiffs challenge the constitutionality of chapter 940 of the Laws of 1984 which amended the Rent Stabilization Law so as to require landlords to provide renewal leases to not-for-profit hospitals based on the primary residency status of the hospital’s employee-subtenant, rather than on the primary residency status of the tenant of record.
Both the State of New York and Lenox Hill cross-move for summary judgment, while Lenox Hill also cross-moves for leave to amend its answer to plea the affirmative defense of estoppel.
Plaintiffs own an apartment building located at 420 East 79th Street in Manhattan, which they purchased in 1976. During the 1960’s Lenox Hill, a not-for-profit corporation and private hospital, entered into leases for 18 apartments in plaintiffs’ building for the purpose of subletting them to its employees, primarily nurses. Lenox Hill obtained regular lease renewals over the years on most of the apartments and presently is the tenant of record for a total of 15 apartments, all of which are subject to the Rent Stabilization Law.
Six of the leases have expired and notices of nonrenewal of the leases have been served on Lenox Hill and the subtenants in residence. Apparently all but one of the apartments are occupied at the present time by Lenox Hill employees, although not the same employees who occupied the apartments as of the date of the last lease renewal. One apartment is allegedly vacant.
In an effort to prevent tenants from profiteering by subletting their rent-stabilized apartments, the Legislature enacted the Omnibus Housing Act of 1983 (L 1983, ch 403) which added section 226-b to the Real Property Law and amended the Rent Stabilization Law. Pursuant to this new legislation, *984 tenants were required to obtain the landlord’s consent prior to subletting. The amount of rent a subtenant could be charged and the term of a sublease were also restricted (Administrative Code of City of NY [Rent Stabilization Law] § 26-511).[2] The Omnibus Housing Act further provided that the protections of the Rent Stabilization Law would be available only to a tenant named in the lease occupying an apartment as his or her primary residence, a definition which did not extend to subtenants or other occupants (Rent Stabilization Law §26-504 [a] [1] [f]). Thus, a landlord was no longer required to offer a renewal lease to a tenant of record who was not using the apartment as his or her primary residence.
The Legislature recognized that this restriction would adversely affect a corporate tenant such as Lenox Hill which does not use the apartments it rents as its primary residence, but subleases them to individuals who do. Therefore, it passed chapter 940 of the Laws of 1984, amending section 5 (a) (11) of the Emergency Tenant Protection Act (L 1974, ch 576, §4 [§ 5]; McKinney’s Uncons Laws of NY § 8625 [a] [11]) and Administrative Code § YY51-3.0 (renum § 26-504 [a] [1] [f]). The amendments provided, inter alia: "For the purposes of this subparagraph where a housing accommodation is rented to a not-for-profit hospital for residential use, affiliated subtenants authorized to use such accommodations by such hospital shall be deemed to be tenants”.
Administrative Code § YY51-6.0 (renum § 26-511 [c] [12]) was also amended to provide that "a not-for-profit hospital shall have the right to sublet any housing accommodation leased by it to its affiliated personnel without requiring the landlord’s consent”. The amended section also restricted the landlord’s right to limit the term of the sublease and provided that "whenever a not-for-profit hospital executes a renewal lease for a housing accommodation, the legal regulated rent shall be increased by a sum equal to fifteen percent of the previous lease rental for such housing accommodation, hereinafter referred to as a vacancy surcharge, unless the landlord shall have received within the seven year period prior to the commencement date of such renewal lease any vacancy increases or vacancy surcharges allocable to the said housing accommodation”. (Rent Stabilization Law § 26-511 [c] [12].)
By these amendments, the Legislature sought to ensure that *985 not-for-profit hospitals could continue to supply their employees with affordable, convenient housing by regular renewal of rent-stabilized leases. At the same time, the landlord would be allowed to recoup, in the form of a 15% vacancy surcharge, rent increases which might have been available had the apartments become vacant, rather than continuing to be rented under an uninterrupted series of renewal leases.
As a corporation in existence since 1917, Lenox Hill allegedly has a perpetual existence and will, presumably, always have employees in need of housing. Thus, plaintiffs claim that chapter 940 entitles Lenox Hill to "perpetual renewal leases” for apartments it does not occupy thereby depriving plaintiffs of any "reasonable expectation of regaining possession of the apartments upon vacatur of the occupants.” Plaintiffs challenge the constitutionality of chapter 940 claiming that the alleged loss of their reversionary interest in the apartments constitutes a taking without just compensation.
Lenox Hill maintains that plaintiffs are estopped from challenging the constitutionality of chapter 940 because, in collecting the 15% vacancy surcharge, plaintiffs have availed themselves of the benefits of the statute and cannot now object to it on constitutional grounds. Because estoppel was not affirmatively pleaded in the answer served by Lenox Hill, permission to amend that answer is sought.
Leave to amend pleadings should be freely given, in the absence of prejudice or surprise (CPLR 3025 [b]; Blasch v Chrysler Motors Corp., 93 AD2d 934), neither of which has been shown. Leave to amend will not be granted, however, where the proposed amendment is without merit (Megaris Furs v Gimbel Bros., 172 AD2d 209).
While it has been stated that " 'one who partakes of advantages which a statute affords is ordinarily barred from attacking the statute on constitutional grounds’ ” (State Div. of Human Rights v State of New York, Executive Dept., Div. of State Police, 62 AD2d 617, 626, appeal dismissed 46 NY2d 939), that general rule is apparently no longer viable (see, Matter of Kovarsky v Housing & Dev. Admin., 31 NY2d 184, 192; Matter of Lemp v Town Bd., 90 Misc 2d 360). Therefore, I find no merit to Lenox Hill’s estoppel argument and leave to amend its answer is denied.
The Fifth Amendment of the United States Constitution, applicable to the States through the Fourteenth Amendment, provides that there shall be no taking of private property for *986 public use without just compensation. This constitutional guarantee is " 'designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole’ ” (Penn Cent. Transp. Co. v New York City, 438 US 104, 123, quoting Armstrong v United States, 364 US 40, 49). No set test has been developed to determine when compensation will be due as a result of the imposition of governmental restrictions on property, although the "economic impact of the regulation, especially the degree of interference with investment-backed expectations, is of particular significance” (Loretta v Teleprompter Manhattan CATV Corp., 458 US 419, 426). A taking "may more readily be found when the interference with property can be characterized as a physical invasion by government” (Penn Cent. Transp. Co. v New York City, supra, at 124) or where " 'the government deliberately brings it about that its agents, or the public at large, "regularly” use, or "permanently” occupy, space or a thing which theretofore was understood to be under private ownership’ ” (Seawall Assocs. v City of New York, 74 NY2d 92, 102, cert denied 493 US 976, quoting Michelman, Property, Utility and Fairness: Comments on the Ethical Foundations of "Just Compensation” Law, 80 Harv L Rev 1165,1184 [1967]).
A "physical taking” of property by government action compels the property owner to "surrender the most basic attributes of private property, the rights of possession and exclusion” (Seawall Assocs. v City of New York, supra, at 102). Where government action results in a permanent physical occupation of property, there is a taking " 'without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner’ ” (Nollan v California Coastal Commn., 483 US 825, 831-832, quoting Loretto v Teleprompter Manhattan CATV Corp., supra, at 434-435).
Governmental regulation of property falling short of a physical taking may nevertheless amount to a "regulatory taking”: "(1) if it denies an owner economically viable use of his property, or (2) if it does not substantially advance legitimate State interests” (Seawall Assocs. v City of New York, supra, at 107 [emphasis in original]).
In claiming that chapter 940 is unconstitutional, plaintiffs rely heavily on the decision of the Appellate Division, First Department, in 520 E. 81st St. Assocs. v Lenox Hill Hosp. (157 AD2d 138, revg 142 Misc 2d 723, revd on other grounds 77 *987 NY2d 944). The Appellate Division addressed the constitutionality of chapter 940 in an action between a landlord and Lenox Hill which parallels the facts of this case, except that the apartment building in 520 E. 81st St Assocs. had undergone conversion to a condominium form of ownership. The Supreme Court had found that Lenox Hill was entitled to renewal leases as the intended beneficiary of chapter 940 and because the plaintiff landlord, unlike plaintiffs herein, had failed to provide proper statutory notice of its intention not to offer renewal leases (142 Misc 2d, at 725). The IAS Court declined to address the constitutional issue because the Attorney-General had not been notified of the challenge, as is required by law (supra, at 726).
The Appellate Division reversed the IAS Court and addressed the constitutionality of chapter 940. The Court found that both a physical and regulatory taking would result if Lenox Hill were entitled to renewal leases. A physical taking was found to arise because Lenox Hill’s corporate existence, its need for employee housing and its right to renewal leases were virtually perpetual, resulting in the permanent loss of plaintiff of its right to decide who occupies the property and on what terms and depriving plaintiff permanently "of the opportunity to sell the apartments free and clear of tenancies” (157 AD2d, supra, at 148).
The Appellate Division found a regulatory taking in that chapter 940 "fails to advance, and indeed contravenes, the purpose of the Rent Stabilization Law to which it relates” (supra, at 149) because it permits Lenox Hill, as tenant of record, to dislodge subtenants no longer employed by the hospital. Further, application of chapter 940 to Lenox Hill "deprives the owner of the value of an important single element in its bundle of property rights, namely, the expectation of a residual/reversionary interest in these apartments, which has now been lost” (supra, at 150). Consequently, the owner was deprived of the resale value of the apartments (supra, at 151).
However, in an effort to sustain the constitutionality of chapter 940, the Court rejected the IAS Court’s interpretation of the statute as requiring the landlord to offer renewal leases to Lenox Hill. Rather, the Appellate Division found that the statute required the landlord to offer renewal leases to Lenox Hill’s subtenants, if they met the requirement of primary residency (supra, at 153). Since the renewal leases would be offered to individuals, rather than Lenox Hill, the plaintiff *988 would have a reasonable expectation of vacancies at some time. The Court rejected Lenox Hill’s argument that it was entitled to a renewal lease because the plaintiff had failed to serve a proper notice of nonrenewal.
The Appellate Division decision was reversed by the Court of Appeals (77 NY2d 944) which found that the landlord’s failure to provide the statutory notice of nonrenewal required it to offer Lenox Hill renewal leases. Therefore, it was unnecessary for the Court to address the constitutional issue and the decision of the IAS Court was reinstated.
Consequently, the Appellate Division’s decision is not binding precedent, although it is, of course, entitled to serious consideration (see, 29 NY Jur 2d, Courts and Judges, § 483). There are two distinguishing factors present in this case which now compel a finding of constitutionality. After the Appellate Division rendered its decision, the Supreme Court of the United States decided a case entitled Yee v City of Escondido (503 US —, 118 L Ed 2d 153). Yee effectively overruled Hall v City of Santa Barbara (797 F2d 1493, amended 833 F2d 1270, cert denied 485 US 940), one of the cases relied on by the Appellate Division in finding a physical taking. Additionally, this case involves a rental property whereas 520 E. 81st St. Assocs. (supra) involved a condominium.[3]
The case of Yee v City of Escondido (supra) involved a challenge to a mobile home rent control ordinance brought by mobile home park owners. The local ordinance rolled back the rents that owners could charge for the rental of "pads” for mobile homes and prohibited rent increases without the City Council’s approval. The local ordinance was passed after enactment of State legislation which strictly limited the bases upon which an owner could terminate a mobile home tenancy. The owner could not require removal of a mobile home when sold, charge a transfer fee for the sale or disapprove of a purchaser, unless the purchaser was unable to pay the rent. The purchaser could continue to rent the pad. The owners argued that, because of the State law, the local ordinance effectively deprived them of the use of their property and gave tenants and their successors the right to permanently occupy the property. The Supreme Court rejected the owners’ argu *989 ment and found that the ordinance did not result in a physical taking.[4]
In Seawall Assocs. v City of New York (supra), the regulation under scrutiny prevented owners of single-room occupancy (SRO) housing from demolishing their buildings and required them instead to rehabilitate their properties and lease every unit to "bona fide” tenants or risk substantial penalties. Alternatively, owners could purchase exemptions for a large fee. The Court of Appeals found that the SRO owners would be "forced” by the government to rent their properties to strangers, a compelling case for finding a physical taking. The Seawall Court contrasted the SRO owners’ loss of their "fundamental rights to possess and to exclude” with "rent-control and other landlord-tenant regulations” that had been upheld which "merely involved restrictions imposed on existing tenancies where the landlords had voluntarily put their properties to use for residential housing” (supra, at 105).
In Yee (supra, 503 US, at —, 118 L Ed 2d, at 165), the Supreme Court reiterated that the regulation of a landlord-tenant relationship voluntarily entered into by the owner, and not forced upon it by the government, does not create a physical taking because such a relationship lacks the "required acquiescence” which " 'is at the heart of the concept of occupation’ ”.
Unlike the owners in Seawall or in Loretto v Teleprompter Manhattan CATV Corp. (supra),[5] plaintiffs herein voluntarily opened their premises to the occupancy to which they now object. They were not compelled to become residential landlords, but rented their apartments to Lenox Hill knowing that they would be occupied by hospital employees. Chapter 940 does not force plaintiffs to open their property to strangers, but rather, compels them to continue to lease the apartments to their chosen tenant as long as requirements of primary residency are met, just as in the case of an individual tenant in occupancy. Plaintiffs may be deprived of the ability to select a particular subtenant, but they have not been deprived of any opportunity to sell the apartments free of tenancies since this is a rental building (compare, 520 E. 81st St. Assocs. v Lenox Hill Hosp., 157 AD2d, supra, at 148).
*990 The right to exclude is "one of the most treasured strands in an owner’s bundle of property rights” (Loretta v Teleprompter Manhattan CATV Corp., supra, at 435). Plaintiffs claim that chapter 940 wrests from them their right to exclude. In actuality, since plaintiffs voluntarily opened their property to occupancy by others, they "cannot assert a per se right to compensation based on their inability to exclude particular individuals” (Yee v City of Escondido, supra, 503 US, at —, 118 L Ed 2d, at 167). Regulations which require a landowner to accept tenants he or she does not like or which restrict the amount of collectible rents, such as chapter 940, do not amount per se to a physical taking (see, supra, at —, at 166).
Plaintiffs have failed to show the loss in perpetuity of their reversionary interest in their property or that the statute requires them to "refrain in perpetuity from terminating a tenancy”, which could amount to a physical taking (Yee v City of Escondido, supra, at —, at 166). Plaintiffs have not demonstrated that any of the avenues for changing the use of their property, such as proposed occupancy by the owners themselves, have been closed to them or that they "are not in fact free to change the use of their land” (supra, at —, at 165; compare, Seawall Assocs. v City of New York, supra). The fact that an apartment is occupied by an individual tenant of record rather than by a subtenant of a not-for-profit hospital of potentially perpetual existence does not guarantee that the apartment will ever become vacant. The Rent Stabilization Law allows continuing occupancy by primary resident tenants and their family members under circumstances which might very well be perpetual. On the other hand, it also provides for the loss of a nonprofit hospital’s renewal rights if its subtenants fail to meet the test of primary residency or if the apartments are vacant during the crucial period, so that no subtenant exists whose residency must be addressed. Further, plaintiffs’ reversionary interest here does not include the right to sell the apartments. Plaintiffs would continue to rent the apartments at issue, even if Lenox Hill were not the tenant of record.
For all of the above reasons, I find that chapter 940 does not effect a physical taking (see, Yee v City of Escondido, supra).
Determination of whether a regulatory taking has occurred requires "essentially ad hoc, factual inquiries” (Penn Cent. Transp. Co. v New York City, supra, at 124; Yee v City of Escondido, supra). Regulation which goes too far will be recognized as a taking (Yee v City of Escondido, supra, 503 *991 US, at —, 118 L Ed 2d, at 166, citing Pennsylvania Coal Co. v Mahon, 260 US 393, 415). Land use regulation will not effect a taking if it substantially advances legitimate State interests and does not deny an owner economically viable use of his or her land (Nollan v California Coastal Commn., supra, at 834). A use restriction may constitute a taking if it is not reasonably necessary to effectuate a substantial government purpose, although a broad range of governmental purposes are acceptable (supra, at 834-835). Legislative enactments carry a strong presumption of constitutionality and a court should not concern itself with questions of " 'reasonableness, wisdom and propriety’ ” (Lincoln Bldg. Assocs. v Barr, 1 NY2d 413, 415, appeal dismissed 355 US 12). The party challenging the statute has the burden of rebutting this presumption (supra, at 418). In this case, plaintiffs have failed to do so.
A principal goal of the Rent Stabilization Law is to curb oppressive conduct and profiteering by landlords (see, Rent Stabilization Law § 26-501). That goal is advanced by providing protection to Lenox Hill and its employees. A landlord should not be permitted to rent its premises to a nonprofit entity such as Lenox Hill and then be heard to complain that it had not foreseen the occupancy of the property by the very persons intended by the lease to occupy the premises. Further, chapter 940 promotes the general health and welfare of the public that the Rent Stabilization Law, which addressed the housing shortage in the City, was designed to protect. During what is considered to be a continuing emergency in the residential rental market, the legislation permits nonprofit hospitals to obtain housing for their medical personnel which might not otherwise be available. There is no question but that the apartments are in fact rented to hospital employees. Thus, it is ultimately residential tenants who are being protected. Consequently, I find a sufficiently "close nexus” between the regulation and the end sought to be accomplished by the Rent Stabilization Law (compare, Seawall Assocs. v City of New York, supra, at 111).
As previously indicated, the Omnibus Housing Act of 1983 was enacted, in part, to prevent tenant profiteering. Lenox Hill is not using the apartments to make a profit. Therefore, it was reasonable for the Legislature to exempt nonprofit hospitals such as Lenox Hill from the 1983 restrictions.
Consequently, I find that plaintiffs have failed to demonstrate that chapter 940 does not further the purposes of the Rent Stabilization Law and that, in fact, the legislation does *992 substantially promote legitimate State interests (but see, 520 E. 81st St. Assocs. v Lenox Hill Hosp., 157 AD2d 138, supra).
Nor have plaintiffs demonstrated that they have been denied economically viable use of their property. As previously discussed, plaintiffs have not shown that they have been deprived of their reversionary interest in the apartments any more so than if the apartments were rented to individuals. There has been no showing that the value of any reversionary interest in a rent-stabilized apartment is substantially less when the tenant is a not-for-profit hospital as opposed to an individual. Plaintiffs have collected and will continue to collect a surcharge, otherwise unavailable to a landlord when an apartment is continually occupied by the same rent-stabilized tenant.
Further, plaintiffs did not invest in this property with the expectation of selling the units (compare, 520 E. 81st St. Assocs. v Lenox Hill Hosp., 157 AD2d, supra, at 151). They are not presently seeking to sell the apartments, but to rerent them. Plaintiffs purchased the building with knowledge of Lenox Hill’s leases and prior to the enactment of the Ominbus Housing Act of 1983. Chapter 940 was passed shortly after the 1983 legislation went into effect. The brief period of time between the enactment of the 1983 and 1984 laws was insufficient to give rise to any reasonable expectation of recovering the apartments. Thus, plaintiffs have not been frustrated in their "distinct investment-backed expectations” (see, Penn Cent. Transp. Co. v New York City, supra, at 124).
Plaintiffs have not expressed any desire to alter the use of their property, nor have they claimed that chapter 940 prohibits them from doing so (compare, Seawall Assocs. v City of New York, supra). Chapter 940 merely restricts plaintiffs’ conduct; it does not affirmatively require them to "dedicate their properties to a public purpose” (compare, supra, at 114). Plaintiffs have not demonstrated that the law denies them the full use of their property or a reasonable return on their investment (see, supra, at 108-109). Consequently, I find that chapter 940 does not effect a regulatory taking.
Finally, plaintiffs’ claim that apartment 16-G was unoccupied when the lease for that apartment expired is uncontroverted. Thus, they seek a final judgment of possession for the apartment. However, it appears that the apartment was occupied by a Lenox Hill employee during the crucial 30-day notice period for the offering, or refusal, of a renewal lease. *993 Chapter 940 has made the subtenant in occupancy the party whose primary residency status controls Lenox Hill’s right to renew. The landlord bears the burden of proving that grounds for removal existed during the 30-day notice period, not after the lease expired. Thus, the primary residency of Lenox Hill’s subtenant as of the time of the notice of nonrenewal would have to be considered (see, Keller v Panneton, 121 Misc 2d 381). The facts concerning that person’s entire residency would have to be reviewed to determine Lenox Hill’s right to renewal (see, Ansonia Assocs. v Consiglio, 163 AD2d 98). Since plaintiffs have not alleged that any of the Lenox Hill subtenants, much less the former occupant of 16-G, did not occupy their apartments as their primary residences, plaintiffs are not entitled to a judgment of possession for apartment 16-G and have no grounds on which to deny Lenox Hill renewal leases to any of the apartments.
Accordingly, plaintiffs’ motions for summary judgment are denied and defendants’ cross motions are granted. Lenox Hill’s cross motion seeking leave to amend is denied. As to plaintiffs’ first and second causes of action in each of the complaints, defendants are entitled to a declaration that chapter 940 of the Laws of 1984 is constitutional and a declaration that Lenox Hill is the primary resident of the apartments in issue and is entitled to renewal leases. All the remaining causes of action in this consolidated action are dismissed. Lenox Hill is not entitled to recover attorneys’ fees as sought in its counterclaims (see, Peck v Wolf, 157 AD2d 535, lv denied 75 NY2d 709) and therefore the counterclaims are dismissed.

. Plaintiffs moved for consolidation and for summary judgment in the separate action, Manocherian v Lenox Hill Hosp. (index No. 1624/92). The parties stipulated to consolidate the two cases under index No. 24431/91. The summary judgment motions are thus also consolidated for determination herein.

. Unless otherwise noted, all references are to the present statutory sections which were renumbered effective September 1,1986.

. Further, by reinstating the lower court decision, the Court of Appeals apparently also approved the finding of the IAS Court that renewal leases are to be offered to the hospital and not to the subtenants.

. For procedural reasons, the court did not consider whether there was a regulatory taking.

. In Loretto (supra), the owner was required by law to permit a cable television company to install cable equipment on her property.