OPINION OF THE COURT
James J. Brucia, J.
This summary proceeding, to dispossess the respondent Jewish Child Care Association of New York (JCCA) as a *812 holdover tenant, raises but two questions: (1) Does the JCCA’s use of the subject apartment constitute a "residential tenancy” which places JCCA under the umbrella of the New York City Rent Stabilization Law of 1969 effective May 12, 1969 (RSL)?; and (2) If JCCA’s tenancy is covered by the RSL, does the RSL protect JCCA from eviction as a holdover tenant?
After carefully considering the testimony, exhibits and applicable statutes and regulations, the court answers both of these questions in the affirmative and grants judgment for the respondent dismissing the petition in its entirety.
Despite the voluminous exhibits, the extensive prior litigation and the lengthy posttrial memoranda submitted by the parties, the salient facts are not in dispute. JCCA is a not-for-profit corporation which was founded in 1946. It has leased the subject apartment since 1955, using it as a "group home” for adolescent girls with emotional difficulties. JCCA has been licensed to operate such a group home by the New York State Board of Social Welfare since 1974. The residents of the group home, who number no more than eight, remain there for approximately six months at a time. Two JCCA staff members remain in the home at all times.
In February 1977, the owner of the building in which the subject apartment is located began to convert the building to co-operative ownership pursuant to an offering plan filed with the Attorney-General’s office. In an attempt to purchase stock in the co-operative then in formation, JCCA executed a subscription agreement and tendered a check to the co-operative corporation. Its tender was refused on the ground that under the plan, corporate tenants were required to designate an individual to purchase the shares of the co-operative corporation and JCCA had failed to do so. Thereafter, the petitioner, who has resided in the building since May, 1975 and was, at one time, the president of the co-operative corporation which owns the building, purchased the shares of stock allocated to the subject apartment. The petitioner was issued a proprietary lease to the subject apartment and he now seeks possession under said proprietary lease. JCCA’s last lease to the apartment expired on June 30, 1977 and it was not offered a renewal lease. Thereafter, JCCA began paying rent to the petitioner and began paying monthly maintenance charges respecting the apartment.
*813 It would appear that, if JCCA’s tenancy is characterized as residential, the Rent Stabilization Law of 1969 is applicable as is the Code of the Real Estate Industry Stabilization Association of New York City, Inc. (the Code). Subdivision (f) of section 2 of the Code defines "Dwelling Units Covered by this Code” as those "located in any Class A multiple dwelling not owned as a cooperative or as a condominium * * * occupied or intended to be occupied by one or more individuals as a residence” (emphasis supplied). Since the building was not a co-operative on May 12, 1969 (the date the RSL was filed with the Secretary of State of the State of New York and deemed the effective date of the RSL and the Code), the only question as to the applicability of the RSL and the Code is whether JCCA’s tenancy is commercial or residential.
The court is convinced that the evidence presented at the trial clearly demonstrates that JCCA’s tenancy is residential. The group home’s sole purpose as conducted by JCCA is to provide a therapeutic residence for the children placed there. The children attend local schools, use neighborhood recreational facilities and presumably become part of the community in which the group home is located. The structure of JCCA’s program is geared towards emulating a family-type life-style in the group home. Moreover, subdivision 17 of section 371 of the Social Services Law, pursuant to which JCCA is licensed to operate a group home, and the regulations promulgated thereunder require that a group home be "specifically designed to emulate in appearance a reasonably sized biological unitary family.” (Little Neck Community Assn. v Working Organization for Retarded Children, 52 AD2d 90, 92.) Inasmuch as it has been held for these reasons, that group homes constitute "families” and are entitled to lease dwellings in areas zoned for single family residential use (see, e.g., City of White Plains v Ferraioli, 34 NY2d 300; Little Neck Community Assn. v Working Organization for Retarded Children, supra; Matter of McMahon v Amityville Union Free School Dist., 48 AD2d 106), by a parity of reasoning, it is manifest that group home occupancy by a charitable institution is "residential” rather than "commercial”.
It should also be noted that the leases under which JCCA occupied the premises characterize that occupancy as residential. JCCA’s first lease dated July 20, 1955 so characterizes the tenancy. Thus the 1955 lease provides: "Apartment 14A is to be used and occupied solely as a strictly private dwelling by *814 the Tenant and the family of the Tenant consisting of 10 persons and not otherwise.”
Paragraph 26 of that 1955 lease, which sets a limit on the number of persons who may occupy the premises, further clarifies the lease’s concept of "family”: "The demised apartment shall be occupied by not more than 10 persons at least one of whom shall be an adult and by children whose minimum age shall be ten years.” When read together, these two paragraphs demonstrate that the parties to the 1955 lease considered JCCA’s group home a "family” residence.
Similarly, in the 1974 lease, the last lease to JCCA, the tenancy was also described as a residential tenancy by a "family.” Thus, paragraph 2 of that lease provides: "The demised premises shall be occupied only by the Tenant and the members of the immediate family of the Tenant and as a strictly private dwelling apartment and for no other purpose.”
Again, a subsequent portion of the lease, i.e., paragraph 30, further defines the "family” to harmonize it with the structure of the group home operated by JCCA: "The demised apartment shall be occupied by not more than ten (10) persons at least one of them shall be an adult and by children whose minimum age shall be ten (10) years.”
Accordingly, since the court has found that JCCA’s tenancy of the subject apartment was residential in nature and that therefore the RSL and the Code are applicable, the next area of inquiry is whether the Code precludes the eviction of JCCA by the petitioner. In this regard, section 54 of the Code provides protection for JCCA. Subdivision (a) of that section of the Code provides in pertinent part that, under the circumstances of this case, respondent is entitled to a renewal lease: "The owner shall not be required to offer a renewal lease to a tenant only upon one of the following grounds: (a) Occupancy by proprietary lessee — The dwelling unit is located in a structure or premises owned by a cooperative corporation or association which is allocated to an individual proprietary lessee or is a unit in a property under the provisions of the Condominium Act, and the owner who does not reside in the building seeks in good faith to recover possession. ” (Emphasis supplied.)
The evidence in the instant case indicates that the petitioner does not meet the requirements of section 54 of the Code. Petitioner resides in the building in which the subject apartment is located and has done so since May, 1975, which was prior to the building’s conversion to a co-operative. The *815 record also indicates that the petitioner was the president of the co-operative corporation and, therefore, must be deemed to have knowledge of JCCA’s tenancy and its claim to protection under the RSL. That being the case, it cannot be said that the petitioner seeks to recover possession in good faith within the meaning of section 54 of the Code. Accordingly, the petitioner is not entitled to the judgment evicting the respondent.
The parties devoted a great deal of energy to discussing the question of whether the conversion of the building in which the subject apartment is located into a co-operative form of ownership was proper. Although the court does not feel that this is necessary for the outcome of the case, it should be noted that the evidence and testimony indicate that the conversion in 1977 was proper and in accordance with section 61 of the Code.