JEROME KOENIG, Respondent, v JEWISH CHILD CARE ASSOCIATION OF NEW YORK, Appellant.

First Department, April 16, 1985

### APPEARANCES OF COUNSEL

*George P. Leshanski* for appellant.

*Michael A. Schwartz, P. C.,* for respondent.

### OPINION OF THE COURT

BLOOM, J.

Jewish Child Care Association (JCCA) is a not-for-profit corporation. Since 1955 it has been the tenant in possession of apartment 14-A in premises 320 West End Avenue. During all of this period it has been licensed by the State Board of Social Welfare to operate the apartment as a group home for adolescent girls with emotional problems. JCCA entered into possession of the apartment which contains eight rooms and four baths under a lease dated July 10, 1955. That lease recognized the nature of the tenancy. In separate paragraphs it provided:

"Apartment 14A is to be used and occupied as a strictly private dwelling by the Tenant and the family of the Tenant consisting of 10 persons and not otherwise * * *

"The demised premises shall be occupied by not more than 10 persons at least one of whom shall be an adult and by children whose minimum age shall be ten years".

Occupancy continued for the next 22 years under the original and successor leases, all of which contained clauses identical with or similar to the two above recited. In April 1977 an eviction plan of cooperative conversion was declared effective. JCCA sought to purchase the apartment occupied by it as a group home. Its tender of the full purchase price was rejected by the sponsor on the ground that, as provided by the prospectus, only "persons" were eligible to purchase. It is now apparent that this rejection was improper for, as tenant in possession, General Business Law § 352-eeee (2) (d) (ix) plainly conferred upon it the right to purchase (*Consolidated Edison Co. v 10 W. 66 St. Corp.*, 61 NY2d 341). Indeed, after petitioner brought his initial hold-over proceeding in August 1978, respondent sought a declaratory judgment which would have entitled it to purchase the apartment. After a motion by JCCA for a temporary injunction had been denied and the parties remitted to the Civil Court, that eviction proceeding was discontinued.

Be that as it may, the shares allocated to apartment 14-A were purchased in July 1977 by petitioner, a tenant in the building, who also purchased the shares allocated to the apartment in which he was and is residing. He is now the holder of the proprietary leases to both apartments, one of which he occupies.

When JCCA's last lease expired on June 30, 1977, no new lease was offered to it. It remained in possession as a rent-stabilized tenant. On September 26, 1979, petitioner served a notice to vacate on JCCA on the ground that the premises were used for commercial purposes. In November 1979, this proceeding was begun. The Civil Court noted (104 Misc 2d 811, 813) that a group home, as defined in Social Services Law § 371 (17) is required to be " 'specifically designed to emulate in appearance a reasonably sized biological unitary family' " (citing *Little Neck Community Assn. v Working Org. for Retarded Children*, 52 AD2d 90, 92). It also pointed out that the courts have accorded status as families to such groups with respect to occupancy of homes in areas zoned for single-family occupancy (*City of White Plains v Ferraioli*, 34 NY2d 300; *Little Neck Community Assn. v Working Org. for Retarded Children*, 52 AD2d 90, *supra; Matter of McMahon v Amityville Union Free School Dist.*, 48

AD2d 106). As such, it held that they could not be evicted under the Code of the Rent Stabilization Association of New York City, Inc. § 54 (A) by the proprietary lessee of a cooperative apartment unless such proprietary lessee "who does not reside in the building seeks in good faith to recover possession". Since the petitioner could not meet these requirements, the Civil Court dismissed the proceeding.

The Appellate Term, relying on our decisions in *Matter of Walter & Samuels v New York City Conciliation & Appeals Bd.* (81 AD2d 212) and *Matter of Cale Dev. Co. v Conciliation & Appeals Bd.* (94 AD2d 229, *affd* 61 NY2d 976), reversed. We think that that court placed too bright a gloss on these decisions. In *Matter of Walter & Samuels (supra)*, the lease was granted to the Permanent Mission of the Syrian Arab Republic to the United Nations. The apartment was utilized as the residence of Syria's Permanent Representative to the United Nations. After his recall, his successor entered into occupancy. When the lease expired, the landlord applied to the Conciliation and Appeals Board (CAB) for permission not to renew the lease. CAB denied the application. We vacated the denial and remanded the matter to CAB with a direction that it issue an order permitting the landlord to withhold permission to renew. The rationale behind our ruling was that the Permanent Mission, the lessee, had its address at another place and, therefore, the residence was not the primary residence of the Mission. In *Matter of Cale Dev. Co. (supra)*, the lease was issued to a closely held corporation for occupation by an officer. The officer in question was its president. When the building was converted to cooperative ownership, the corporation elected not to buy. The apartment was sold to another. In time, the apartment was turned over to the president's son, also an officer of the corporation, and the president and his wife returned to their primary residence in Little Falls, New York. When the lease expired, the holder of the proprietary lease applied to CAB for permission not to renew. CAB granted the application. We agreed on the ground that the apartment was intended by the corporation for the occupancy of its president, that the apartment was not the president's primary residence and the proprietary lessor was not required to renew the corporation's lease. However, as we noted in *Matter of Sommer v New York City Conciliation & Appeals Bd.* (93 AD2d 481), where the proof establishes that the residence is, in fact, the primary residence of the officer for whose benefit the corporation leased the apartment, and he continues in residence, renewal is required (*see also, Matter of Sommer v New York City Conciliation & Appeals Bd.,* 99 AD2d 991).

Adverting back to the facts before us, it is clear that the initial lease to JCCA, and the leases which succeeded it, all recognized the group home as an extended family group. The children comprising the group lived at the apartment for periods approximating two years in length. They were fully integrated into the community as residents. During the period that they lived at the group home, they had no other places of residence. They attended schools in the vicinity and utilized all community facilities. Plainly, as a not-for-profit corporation, JCCA, in the maintenance of the group home was not engaged in commercial activity. In sum, on the record before us, the group home was entitled to all the rights of a family under the Code of the Rent Stabilization Association of New York City, Inc. As such, they could be evicted from the apartment only upon a showing that petitioner had met the requirements of the Code of the Rent Stabilization Association of New York City, Inc. § 54 (A). This he has not done. Hence, he is not entitled to possession of the apartment.

Accordingly, the order of the Appellate Term, First Judicial Department, entered November 21, 1984, which reversed the judgment of the Civil Court denying petitioner landlord a final order of possession and granted such final order, should be reversed, on the law, without costs, and the judgment of the Civil Court reinstated.

KUPFERMAN, J. P. (dissenting). While the purpose for the tenancy is a valuable community-at-large service, one cannot expect the landlord to be the "sisters' " keeper. They are a family only pursuant to statute, and a group home or extended family comes not within the protection of the Rent Stabilization Law. The leasehold estate cannot be subject to the servitude of a perpetual trust for the unfortunate. (*See, Matter of Cale Dev. Co. v Conciliation & Appeals Bd.*, 94 AD2d 229, 235, *affd* 61 NY2d 976.)

SULLIVAN and CARRO, JJ., concur with BLOOM, J.; KUPFERMAN, J. P., dissents in an opinion.

Order, Appellate Term, First Judicial Department, entered on November 21, 1984, reversed, on the law, without costs and without disbursements, and the judgment of the Civil Court, New York County, entered on December 13, 1982, reinstated.