[654 NYS2d 339]

Amir Manocherian et al., Doing Business as Fame Company,
Appellants-Respondents, v Lenox Hill Hospital,
Respondent-Appellant, et al., Defendants.

First Department, February 18, 1997

## APPEARANCES OF COUNSEL

*Gary M. Rosenberg* of counsel, New York City *(Jeffrey Turkel* and *Lawrence M. Furtzaig* on the brief; *Rosenberg & Estis, P. C.,* attorneys), for appellants-respondents.

*Steven E. Obus* of counsel, New York City *(Edward S. Kornreich, Mark P. Monack, Edmund F. Wolk* and *Michael B. Wolk* on the brief; *Proskauer Rose Goetz & Mendelsohn, L. L. P.,* attorneys), for respondent-appellant.

## OPINION OF THE COURT

WILLIAMS, J.

The roots of this dispute lie in the 1960's when defendant Lenox Hill Hospital rented 15 apartments for the housing of some of its nurse/employees in the building located at 429 East 79th Street in Manhattan. The apartments became subject to the Rent Stabilization Law (RSL; Administrative Code of City of NY, tit 26, ch 4) in 1969, and plaintiffs purchased the building in 1976. Both previous owners and plaintiffs offered

Lenox Hill renewal leases. Lenox Hill sublet the apartments to the nurses on a month-to-month basis, and each sublease included notice to the subtenants that "THIS APARTMENT IS NOT SUBJECT TO RENT STABILIZATION PROVISIONS". The nurse/subtenants were evicted when the employment relationship ceased.

The Omnibus Housing Act (OHA; L 1983, ch 403), sought to eliminate abuses of rent stabilization by tenants, especially sublets of stabilized apartments at market rents. Among other things, it provided that only the prime tenant, not subtenants or occupants, qualified as the primary resident for purposes of the nonprimary residence exemption to the RSL, that a sublet required the owner's permission and that the prime tenant could only sublet the apartment two out of every four years. Lenox Hill responded to the OHA, which would have eliminated the employee sublets at issue, by lobbying for legislative relief which resulted in the enactment of Laws of 1984 (ch 940 [Chapter 940]). Chapter 940, *inter alia*, amended the OHA to allow a not-for-profit hospital renting a housing unit for residential use to be deemed a tenant, and amended the RSL to allow a not-for-profit hospital to sublet housing leased for its employees without the landlord's consent.

Plaintiffs decided to challenge Chapter 940 and seek termination of Lenox Hill's tenancies by timely serving notices of nonrenewal on Lenox Hill and the individual subtenants as each of the 15 leases approached expiration during the period between 1991 and 1993. The stated grounds for nonrenewal were the unconstitutionality of Chapter 940, the unconstitutionality of any law which purported to grant subtenants the right to renewal leases or continued occupancy and that Lenox Hill did not occupy the apartments as its primary residence. Subsequently, plaintiffs commenced five separate declaratory judgment actions to recover possession of the apartments, naming Lenox Hill and the individual subtenants as parties. Each action sought:

(1) a declaration of the unconstitutionality and unenforceability of Chapter 940;

(2) a declaration that Lenox Hill was not a primary resident of any of the apartments and was thus not entitled to a renewal lease;

(3) a judgment awarding the owner possession of each apartment; and

(4) an order evicting both Lenox Hill and the subtenants from each apartment so that possession could be granted to the owner free of all tenancies and occupancies.

Lenox Hill appeared and answered the complaints, denying that Chapter 940 was unconstitutional and raising two affirmative defenses: (1) that it was entitled to possession by virtue of Chapter 940 in that it was a not-for-profit hospital and the subject apartments had been occupied by its affiliated employees as their primary residences; and, (2) that it was entitled to renewal leases for the apartments by virtue of the fact that each apartment was rented to it for use by its affiliated employees and has been so used since the inception of its tenancy. The subtenants never answered or appeared in the actions and it was not argued that the subtenants were personally entitled to renewal leases.

Subsequently, plaintiffs moved, and Lenox Hill cross-moved, for summary judgment and Lenox Hill also sought leave to amend its answers to assert the affirmative defense of estoppel. On July 6, 1992, Justice Altman denied plaintiffs' motion for summary judgment and granted Lenox Hill's cross motion for summary judgment, holding that pursuant to Chapter 940, Lenox Hill was entitled to renewal leases. Leave to amend the answers was denied (*Manocherian v Lenox Hill Hosp.*, 154 Misc 2d 982). This Court affirmed Justice Altman's order for the reasons stated therein, with two Justices dissenting. The dissent reasoned that if Chapter 940 were read as vesting renewal rights in Lenox Hill, it would result in an unconstitutional taking and that the only reading that would preserve the statute's constitutionality would be one vesting renewal rights in the subtenants (*Manocherian v Lenox Hill Hosp.*, 196 AD2d 728, 738-739 [Sullivan, J. P., and Ross, J., dissenting]).

The Court of Appeals reversed, declared Chapter 940 unconstitutional *ab initio*, found the statute to be a regulatory taking which failed to advance a legitimate State interest and merely preserved a "valuable perk" for certain health care workers, and remanded for further proceedings (*Manocherian v Lenox Hill Hosp.*, 84 NY2d 385, 396, 400, *cert denied* — US —, 115 S Ct 1961).

On remand, plaintiffs moved for summary judgment seeking ejectment and delivery of possession of the apartments. They argued that absent Chapter 940, the issues herein were governed by the RSL as amended by the OHA, and that since the OHA exempted from rent stabilization housing units "not occupied by the tenant, not including subtenants or occupants, as his primary residence" (L 1983, ch 403, § 41), plaintiff owners were not obligated to renew Lenox Hill's leases and were entitled to possession of the apartments. Lenox Hill cross-

moved for summary judgment on the ground that, notwithstanding the Court of Appeals determination, it was entitled to renewal leases pursuant to *Matter of Cale Dev. Co. v Conciliation & Appeals Bd.* (94 AD2d 229, *affd* 61 NY2d 976). It also alleged, for the first time in this action, that plaintiffs' notices of nonrenewal were defective.

In his August 17, 1995 decision, Justice Schackman granted plaintiffs summary judgment and denied Lenox Hill's cross motion, holding that the Court of Appeals determination in the instant case effectively limited *Cale*'s grant of lease renewal rights to corporate entities to instances where the lease in question specifically named the individual intended occupant. Consequently, where, as here, the leases did not name the intended occupant and created the possibility of a tenancy in perpetuity, the leases could not be renewed. The decision also summarily rejected Lenox Hill's contention regarding the notices of nonrenewal.

When the parties attempted to settle an order and judgment as to the August 17, 1995 decision, Lenox Hill's proposal included a provision as follows: "ORDERED, ADJUDGED and DECREED that as the individual nurse-defendants are residing the *[sic]* above-mentioned apartments as their primary residences, they are entitled to possession of the apartments and the continued benefits of the Rent Stabilization Law of 1969, as amended, including but not limited to renewal leases and continued tenancy rights".

This raised for the first time the contention that if Chapter 940 was unconstitutional then the subtenants should have the right to renewal leases in their own names. Simultaneously, Lenox Hill moved for reargument and clarification, on the issue of whether *Cale (supra)* made a distinction on the basis of whether the intended occupant of a corporate-leased housing unit was specifically named in the lease, and asserted that the subtenants were entitled to renewal rights. Plaintiffs opposed reargument on the grounds that the RSL sans the Chapter 940 amendments provided the subtenants no renewal rights; that the Court of Appeals determination barred such relief; that Lenox Hill had not previously raised this argument; that Lenox Hill lacked standing to seek such affirmative relief for the non-appearing subtenants; and, that Lenox Hill had previously taken the contrary position that the subtenants had no renewal rights.

In the March 20, 1996 decision, which is the subject of this appeal, Justice Schackman held that the individual subtenants

were entitled to renewal leases based upon *Cale (supra)*. The decision further stated that Justices of this Court would have awarded such relief, that the Court of Appeals did not overrule the *Cale* holding that an entity could be a residential tenant, and that the Court of Appeals reversal herein was on the issue of the failure of the landlord to have provided proper notice of nonrenewal, whereas the Court did not have occasion to consider the issue of *Cale*'s impact on the subtenants' rights. The court rejected the contention that the *Cale* issue had not been previously raised, reasoning that no order had been signed effectuating its prior ruling and that it had not previously focused on the *Cale* issue, which only came into "sharp relief" as a result of its prior ruling.

Justice Schackman proceeded, by order and judgment entered May 7, 1996, to award plaintiffs possession of the seven vacant apartments as well as apartment 15F (whose subtenant took possession after commencement of this action), ordered plaintiffs to offer renewal leases to the remaining subtenants and that such subtenants be deemed tenants entitled to the benefits of the RSL. The actions for use and occupancy relating to the eight apartments for which possession was granted were severed and a hearing directed before a Special Referee. Plaintiffs appealed and Lenox Hill cross-appealed.

The central issue on this appeal is whether the motion court correctly interpreted the Court of Appeals decision herein (*Manocherian v Lenox Hill Hosp.*, 84 NY2d 385, *cert denied* — US —, 115 S Ct 1961, *supra*) as having implicitly modified the rule of *Matter of Cale Dev. Co. v Conciliation & Appeals Bd.* (94 AD2d 229, *affd* 61 NY2d 976, *supra*), such that the subtenant nurses occupying the apartments at issue could be deemed the primary tenants under the Rent Stabilization Law, and are thus entitled to renewal leases.

It is the view of this Court that *Manocherian* limits the scope of the *Cale* doctrine and does not, and cannot, create primary tenancies in the subtenant nurses entitling them to renewal leases.

As a threshold matter, it was not an abuse of discretion for the court to hear Lenox Hill's motion for reargument and clarification, which was brought prior to the entry of an order and judgment on the court's initial decision (*Levinger v General Motors Corp.*, 122 AD2d 419, 420), and which addressed questions of law raised for the first time by the court's initial decision and unforeseen by the parties at the time of submission of their initial papers (*see, People v Jones*, 128 AD2d 405,

407-408, *affd* 70 NY2d 547; *Ferrizz v Jahelka*, 125 AD2d 537, 538). A motion court's decision whether to grant or deny a motion for reargument is firmly within its discretion and should only be disturbed where such discretion has been abused (*Rodney v New York Pyrotechnic Prods. Co.*, 112 AD2d 410, 411; *Delcrete Corp. v Kling*, 67 AD2d 1099, 1100). Justice Schackman's decision purporting to modify the *Cale* rule by excluding Lenox Hill's right to renewal leases but giving such rights to the nurse/subtenants gave Lenox Hill the basis, for the first time, to argue that the nurses had separate rights to renewal leases.

*Cale* involved an apartment rented to a corporation pursuant to a standard form lease, a rider to which specifically provided that the apartment was to be occupied by the corporate president and his wife, while the standard form provided that the apartment " 'shall be occupied only by Tenant and the members of the immediate family of Tenant' " (*supra,* at 230). The intended occupants concededly never occupied the apartment as their primary residence and eventually their son moved in, establishing it as his primary residence. After some years, the then-current owner applied to the Conciliation and Appeals Board seeking to deny the corporation a lease renewal, alleging that the apartment was not the primary residence of the intended occupants. The intended occupants alleged that they were entitled to a renewal lease because the occupant son was an immediate family member and an officer of the corporation. The Board found for the owner; the corporation filed a CPLR article 78 petition; and Special Term remanded to the Board to make further determinations. The owner appealed and the Appellate Division reversed and dismissed the petition, finding that the Board's determination that the rider controlled, that the intended occupants did not use the apartment as their primary residence and that the corporate tenant, therefore, was not entitled to a renewal lease, was rationally based on the record and consistent with settled law. The Court of Appeals affirmed for the reasons stated by the Appellate Division.

Subsequent to the *Cale* decision, the rule therein was extended beyond situations where a specific individual was named in the lease to include a class of persons identified in the lease or intended beneficiaries determinable by extrinsic evidence (*see, Koenig v Jewish Child Care Assn.*, 107 AD2d 542, *affd* 67 NY2d 955 [not-for-profit corporation operating group home for emotionally disturbed girls]; *Matter of Sommer v New*

*York City Conciliation & Appeals Bd.*, 116 AD2d 457 [corporate officer and immediate family designated in lease]; *Matter of Schwartz Landes Assocs. v New York City Conciliation & Appeals Bd.*, 117 AD2d 74 [not-for-profit corporation operating home for recently discharged psychiatric patients]; *Park House Partners v Australian Broadcasting Corp.*, 141 AD2d 310 [apartment occupied by corporate manager although neither individual nor class of occupant designated in lease]).

■ The motion court correctly found that, despite the lack of direct reference to *Cale (supra)* in the majority opinion of *Manocherian (supra)*, the Court of Appeals rejected the argument that the rights Lenox Hill had enjoyed pursuant to Chapter 940 could be upheld by *Cale* and its progeny. Having found Chapter 940 to be an unconstitutional taking of property rights from the plaintiff landlord, the majority effectively limited *Cale* by citing with approval excerpts from its progeny that warn of the doctrine's similar potential for creating unconstitutional perpetual tenancies, i.e., Justice Titone's dissent in *Koenig v Jewish Child Care Assn.* (67 NY2d 955, 958-959, *supra)* and Justice Bellacosa's concurrence in *Rent Stabilization Assn. v Higgins* (83 NY2d 156, 176, *cert denied* 512 US 1213; *see, Manocherian v Lenox Hill Hosp.*, 84 NY2d, *supra,* at 398-399). Justice Bellacosa stated in *Higgins (supra,* at 176) that: "[i]t is virtually certain that long, successive successorships to rent-stabilized leaseholds will not be just theoretical possibilities because, markets being markets, they are likely to bloom as perennials, becoming functionally transformed into perpetual stakeholds. The Legislature should satisfy itself, as the courts will have to, that unwarranted de facto results from administrative quasi-judicial determinations do not constitute the functional equivalent of divestitures from landowners of reversionary rights to their properties without just compensation and due process."

Justice Titone noted in *Koenig (supra,* at 958-959) that: "A review of the relevant decisions indicates that, in order to qualify under the primary residence test, there must be an identifiable individual who has the right to demand a renewal lease (*see, Matter of Cale Dev. Co. v Conciliation & Appeals Bd., supra* * * *). Such a limitation is necessary to prevent the apartment from being subject to rent stabilization laws in perpetuity. As we noted in *Matter of Cale Dev. Co. (supra* * * *), '[w]hile * * * a corporate tenant is entitled to a renewal lease provided it can meet the primary residence test, rent stabilization was never intended to place such a tenant's leasehold

estate in perpetual trust for the benefit of whomever, at a particular point in time, might happen to occupy a corporate office.' "

Moreover, as noted in the above quotation from *Koenig,* the *Cale* decision itself states that the creation of perpetual trusts for corporate tenants was not intended. The next sentence of the *Cale* decision states: "As one court has noted, '[A] rent stabilized apartment may not be passed along like a baton in a relay race' [citation omitted]." (94 AD2d, *supra,* at 235.) Hence, *Manocherian* "rolls back" the *Cale* "doctrine" to its limited holding: that a corporation is entitled to a renewal lease where the lease specifies a particular individual as the occupant *and* no perpetual tenancy is possible, a proposition that would deny Lenox Hill's entitlement to renewal leases.

The motion court erred in granting the subtenant nurses renewal leases in their own names. The Court of Appeals declaration that Chapter 940 is unconstitutional effectively removed that provision from consideration, as if it had never been passed (*see, Town of Islip v Paliotti,* 196 AD2d 648). The remaining, governing law is therefore RSL (Administrative Code) § 26-504 (a) (1), as amended by OHA § 41, which provides that the RSL applies to dwellings of six or more units completed after 1947 "except dwelling units * * * (f) not occupied by the tenant, not including subtenants or occupants, as his primary residence". RSL 26-511 (c) (12) (d) and (g) further provide that "where an apartment is sublet the prime tenant shall retain the right to a renewal lease * * * [and the] subtenant shall have no right to a renewal lease" (*see, Neidich v Gottlieb,* 169 AD2d 541). Hence, the applicable law clearly and unambiguously states that the subtenant nurses are not entitled to renewal leases in their own names.

The various theories urged by Lenox Hill to avoid this result are without merit. The circumstances herein do not constitute an "illusory prime tenancy", such as where an alter ego of the owner rents an apartment as the "tenant" and then "sublets" to an innocent third party in an effort to stockpile vacancies or subscriptions for a conversion to cooperative or condominium ownership (*see, Bruenn v Cole,* 165 AD2d 443; *Stutt v Unique Restorations Co.,* 96 AD2d 1039; *Matter of Badem Bldgs. v Abrams,* 70 NY2d 45), or a tenant seeks to profiteer by subletting at above-market rates (*see, Matter of Avon Furniture Leasing v Popolizio,* 116 AD2d 280). Nor does the *Cale* decision, or its progeny, ever suggest entitlement of subtenants to renewal leases; instead, where applicable, it supports the entitlement of

corporations to renewal leases. The Court of Appeals was aware of and chose to foreclose, by declaring Chapter 940 unconstitutional, the remedy of granting the subtenants renewal rights, since absent Chapter 940's insulation from subletting restrictions and nonprimary residence claims, the controlling law consists of the RSL provisions cited *supra*. Finally, the award of these stabilized tenancies to the subtenant nurses would be a windfall, inasmuch as they never appeared in the action, despite being named parties, and never had any expectation of the RSL's protection, since their leases stated that the apartment was not subject to the RSL, the stated term of the lease was one month and the lease rider provided that their occupancy ended upon notice by the Hospital or by the occupant to vacate or of the intent to vacate.

Accordingly, the order and judgment (one paper), Supreme Court, New York County (Walter M. Schackman, J.), entered May 7, 1996, which granted plaintiffs' motion for summary judgment to the extent of determining that defendant Lenox Hill Hospital was not entitled to renewal leases under the Rent Stabilization Law since it does not use the apartments as its primary residence and awarding judgment of possession to certain unoccupied apartments in the subject premises, but dismissed plaintiffs' claims for ejectment as to apartments occupied by the Hospital's nurse/subtenants, declared that said nurse/subtenants who are residing in the apartments as their primary residence are entitled to the benefits of the RSL, including but not limited to renewal leases in their own names, and failed to award plaintiffs use and occupancy for all the subject apartments from the date of the expiration of the most recent renewal leases, should be modified, on the law, to the extent of granting plaintiffs judgments of possession for each of the seven apartments for which possession was not granted, directing the Sheriff to eject any and all tenants, subtenants or occupants thereof, and directing a Special Referee to hear and report with recommendations as to fair market use and occupancy, and otherwise affirmed, without costs.

WALLACH, J. P., NARDELLI, RUBIN and ANDRIAS, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered May 7, 1996, modified, on the law, to the extent of granting plaintiffs judgments of possession for each of the seven apartments for which possession was not granted, directing the Sheriff to eject any and all tenants, subtenants or

occupants thereof, and directing a Special Referee to hear and report with recommendations as to fair market use and occupancy, and otherwise affirmed, without costs. Motion seeking to strike Point II of respondent-appellant's reply brief is denied.