OPINION OF THE COURT
Timmie Erin Elsner, J.
Petitioner commenced this nonprimary residence holdover proceeding in February 1998 to recover possession of the subject premises located at 416 West 47th Street, apartment *352 No. 4-D, New York, New York, from the respondent Fountain House, Inc. (Fountain House). An answer was interposed by respondent dated March 3, 1998.
Petitioner now moves for summary judgment pursuant to CPLR 3212 alleging that no genuine issues of fact exist because the corporate tenant is not entitled to a lease renewal. Petitioner also moves for market use and occupancy and attorney’s fees. Respondent cross-moves for summary judgment.
BACKGROUND
Respondent, Fountain House, is a not-for-profit organization which provides social services, employment programs and housing accommodations to individuals with various disabilities. On February 1, 1983, respondent entered into a written lease with petitioner’s predecessor, Sub Partners Group, for the subject premises. The underlining lease did not designate an individual who would occupy the premises. It did provide that “the demised premises shall be used for residential purposes by such persons as Fountain House, Inc., may designate. The designees will be limited to staff, trainees and other persons associated with Fountain House, Inc.”
Subsequently, several renewal leases were executed. The most recent renewal lease between respondent and petitioner, the current owner of the subject premises, expired on January 31, 1998. The lease renewal describes the tenant/occupant as Fountain House and is silent regarding the individual or class of individuals who may occupy the premises.
The current occupant of the premises has lived there since 1996 and has both physical and mental disabilities. In order to accommodate his needs the premises have been equipped with flashing lights for the telephone and doorbell. Until January 1998, the occupant contributed a portion of the monthly rent to respondent. At no point has petitioner accepted rent directly from the occupant. Upon respondent’s failure to deliver vacant possession of the premises following expiration of the lease, this proceeding was commenced.
DISCUSSION
Pursuant to CPLR 3212, summary judgment should not be granted where there is any doubt as to the existence of a triable issue. (Manufacturers & Traders Trust Co. v Cottrell, 71 AD 2d 538 [1979]; Blittner v Filroben Assocs., 183 AD2d 645 [1st Dept 1992].) The drastic remedy of summary judgment should not be granted where there is any doubt as to the exis *353 tence of material and triable issues of fact. (Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439 [1968]; Bellefonte Re-Ins. Co. v Volkswagenwerk AG., 102 AD2d 753 [1st Dept 1984].) The court’s function is not to determine credibility, but to determine if there exists a triable issue, or if arguably there is a genuine issue of fact. (Capelin Assocs. v Globe Mfg. Corp., 34 NY2d 338 [1974]; Color By Pergament v Pergament, 241 AD2d 418 [1st Dept 1997]; Ferrante v American Lung Assn., 90 NY2d 623 [1997].)
In this instance there is no triable issue. Both parties agree upon the facts herein, but differ as to whether the premises retain their rent-regulated status.
Rent Stabilization Law of 1969 (Administrative Code of City of NY) § 26-504 (a) (1) (f) provides in pertinent part:
“This law shall apply to:
“a. Class A multiple dwellings * * * containing six or more dwelling units which:
“(1) were completed after February first, nineteen hundred forty-seven, except dwelling units * * * (f) not occupied by the tenant, not including subtenants or occupants, as his primary residence, as determined by a court of competent jurisdiction” (emphasis added).
The Court of Appeals first addressed the issue of a corporate tenant’s right to a rent-stabilized renewal lease in Matter of Cale Dev. Co. v Conciliation & Appeals Bd. (61 NY2d 976 [1984]). In that case, a corporate tenant entered into a lease for a rent-stabilized apartment. A rider to the lease provided that the premises were to be occupied by the president of the corporation and his wife. It was conceded that they did not occupy the premises as their primary residence. The Court of Appeals upheld the determination of the Appellate Division, First Department (94 AD2d 229), holding that the designated occupants’ failure to utilize the premises as their primary residence vitiated the corporate tenant’s right to a renewal lease.
As set forth in Manocherian v Lenox Hill Hosp. (84 NY2d 385 [1994], after remand 229 AD2d 197 [1st Dept 1997]), the Appellate Division in Cale (supra) stated that the creation of perpetual trusts for corporate tenants was not intended. Cale further states (94 AD2d, at 235): “As one court has noted, ‘A rent stabilized apartment may not be passed along like a baton in a relay race.’ ”
In Matter of Schwartz Landes Assocs. v New York City Conciliation & Appeals Bd. (117 AD2d 74 [1st Dept 1986]), *354 Fountain House (respondent herein) litigated the issue of whether the rent-stabilized tenancy of a corporate tenant need be renewed when it benefits a class of unnamed individuals as opposed to parties specifically named in the lease. The class at issue in Schwartz Landes was identical to that at bar. The Appellate Division, First Department, set forth a two-part test to determine whether a rent-stabilized renewal lease must be offered to a corporate tenant: (1) whether the individual occupying the apartment is a member of the class designated in the lease by the corporate tenant and the landlord to occupy the apartment; and (2) whether the individual uses the apartment as his or her primary residence.
The Appellate Division held that if the premises are used as the primary residence of the contractually designated parties, then a rent-stabilized lease renewal must be offered. (Matter of Schwartz Landes Assocs. v New York City Conciliation & Appeals Bd., 117 AD2d, supra, at 76.)
Most recently, in Manocherian (supra), the landlord sought to recover 15 apartments leased by Lenox Hill Hospital on New York City’s Upper East Side, which were occupied by the hospital’s nurses. Lenox Hill claimed, among other things, that its tenancies were protected by the enactment of Laws of 1984 (ch 940) which, inter alia, amended the Rent Stabilization Law to allow for a not-for-profit hospital renting a housing unit for residential use to be deemed a tenant.
The Court of Appeals declared chapter 940 unconstitutional ab initio, and found the statute to be a regulatory taking which failed to advance a legitimate State interest and merely preserved “a valuable perk” (84 NY2d 385, 396, supra) for certain health care workers.
On remand, the landlord moved for summary judgment seeking ejectment and delivery of possession of the apartments. Lenox Hill cross-moved for summary judgment on the ground that, notwithstanding the Court of Appeals determination, it was entitled to renewal leases pursuant to Cale (supra).
The motion court held that the individual subtenants were entitled to renewal leases. The landlord appealed the order on the issue of whether the Court of Appeals decision in Manocherian (supra) implicitly modified the rule of Cale (supra) so that the subtenant nurses occupying the apartments at issue could be deemed the primary tenants under the Rent Stabilization Law, and were thus entitled to renewal leases.
The Appellate Division acknowledged that, subsequent to the Cale decision (supra), the rule therein was extended be *355 yond situations where a specific individual was named in the lease to include a class of persons identified in the lease or intended beneficiaries determinable by extrinsic evidence. (See, Koenig v Jewish Child Care Assn., 107 AD2d 542 [1985], affd 67 NY2d 955 [1986] [not-for- profit corporation operating group home for emotionally disturbed girls]; Matter of Sommer v New York City Conciliation & Appeals Bd., 116 AD2d 457 [1986] [corporate officer and immediate family designated in lease]; Matter of Schwartz Landes Assocs. v New York City Conciliation & Appeals Bd., 117 AD2d 74 [1986], supra [not-for-profit corporation operating home for recently discharged psychiatric patients]; Park House Partners v Australian Broadcasting Corp., 141 AD2d 310 [1988] [apartment occupied by corporate manager although neither individual nor class of occupant designated in lease].)
The Appellate Division held that the Court of Appeals decision in Manocherian (supra) “limits the scope of the Cale doctrine and does not, and cannot, create primary tenancies in the subtenant nurses entitling them to renewal leases.” (Manocherian v Lenox Hill Hosp., 229 AD2d 197, 202, supra.)
The Appellate Division explicitly held that the Court of Appeals decision “ ‘rolls back’ the Cale ‘doctrine’ to its limited holding: that a corporation is entitled to a renewal lease where the lease specifies a particular individual as the occupant and no perpetual tenancy is possible”. (Supra, at 205.)
Respondent argues that despite this holding, Manocherian (supra) does not overrule Schwartz Landes (supra), as the Manocherian leases named only a corporate tenant, not a particular class. The premises involved in Manocherian were sublet to nurses who occupied them as an incident to employment at Lenox Hill Hospital, not to those in desperate need of affordable housing.
In this case, the lease at issue sets forth a broad-based class which not only includes those who receive services offered by the respondent, but also “staff, trainees and other persons associated with Fountain House, Inc.” Respondent argues that this class differs in every respect from the group of nurses who were subtenants of Lenox Hill Hospital in that housing for the nurses was a “valuable perk”, which they received as part of their employment.
Respondent overlooks that the class entitled to occupy the corporate apartment at issue includes individuals who would do so as an incident to employment, or training and is not limited to individuals receiving assistance from respondent. *356 The terms of the lease allow perpetual tenancy to a class which includes members who do not differ materially from nurses occupying units leased to Lenox Hill Hospital.
This court finds that the Court of Appeals decision in Manocherian (supra) implicitly overrules the decision of the Appellate Division, First Department, in Schwartz Landes (supra), particularly in an instance where a broad-based class designated in a lease includes those occupying a rent-stabilized unit incident to employment.
It cannot be disputed that those serviced by respondent have a desperate need for affordable housing. However, the needs of its staff and trainees are no different than those of the employees of Lenox Hill Hospital. While the current occupant of the premises appears to be an individual who receives services offered by respondent, upon his vacatur, the premises could be occupied by a staff member or trainee of respondent.
Respondent asserts that because of the need of its constituents, this court should allow it to maintain rent-stabilized status in perpetuity. Despite the emotional appeal attendant to this argument, the services respondent offers to its members and the benefit it delivers to society, this court cannot grant a corporation eternal rent-stabilized status in light of the Manocherian decision (supra).
CONCLUSION
Based on the foregoing, petitioner’s motion for summary judgment is granted and respondent’s cross motion is denied. A final judgment of possession in favor of the petitioner shall issue forthwith, with execution stayed through and including January 31, 1999 conditioned upon respondent paying use and occupancy through that date.
Petitioner’s claims for use and occupancy are limited to the amount set forth in the expired renewal lease of 1996 of $752.41 per month. Upon information and belief, respondent has been paying same pendente lite and therefore no arrears are outstanding. Use and occupancy due through January 31, 1999 shall be set at the same rate.
Pursuant to paragraph 16D of the underlying lease, petitioner, as the prevailing party in this matter, is entitled to reasonable costs and attorney’s fees incurred in connection with this proceeding. This matter is restored to the Part D calendar on October 15, 1998 for a hearing to determine the extent of such fees.