[737 NYS2d 335]

220 WEST 98 REALTY, L.L.C., Appellant-Respondent, v NEW YORK PROVINCE OF THE SOCIETY OF JESUS et al., Respondents-Appellants.

First Department, January 29, 2002

## APPEARANCES OF COUNSEL

*Gary M. Rosenberg* of counsel (*Warren A. Estis* and *Jeffrey Turkel* on the brief; *Rosenberger & Estis, P. C.,* attorneys), for petitioner.

*Douglas A. Kellner* of counsel (*Carol Anne Herlihy* on the brief; *Kellner Chehebar & Deveney,* attorneys), for respondents.

## OPINION OF THE COURT

NARDELLI, J. P.

In this appeal, we are asked to determine whether respondent is entitled to a rent-stabilized renewal lease, or whether the continued tenancy of respondent's members runs afoul of the Rent Stabilization Law.

Respondent the New York Province of the Society of Jesus (the Province) is a New York not-for-profit corporation and a branch of the Society of Jesus, which is also known as the Jesuits, a Roman Catholic religious order founded in 1540. The Jesuits are organized into provinces and each province is made up of numerous communities. Respondent West Side Jesuit Community (WSJC) is one of 30 communities comprising the New York Province.

In 1969, the Province and Borchard Affiliations, Inc. (landlord) entered into a lease agreement whereby the Province leased multiple apartments* in the building designated as 220 West 98th Street, New York, New York. A rider to that lease provided that the apartments were to be sublet by the Province to the students and faculty of Woodstock College, a seminary operated by the Province. In 1974, Woodstock College was closed and the "Extension of Lease" that was executed that year provided that the extension was "in effect for any Jesuit Community of the New York Province of the Society of Jesus."

In 1988, the landlord declined to renew the Province's lease and commenced a summary holdover proceeding (the 1988 proceeding) against the Province and WSJC seeking to recover possession of the 16 apartments then occupied by members of WSJC. The landlord asserted that the Province was not entitled to a renewal lease under the Rent Stabilization Law on the grounds that the apartments were not being used as primary residences. The Civil Court, by decision and order dated March 16, 1989, granted the Province and WSJC summary judgment based on the finding that the apartments were, in fact, being used as primary residences.

The parties, after the landlord filed an appeal from the 1988 proceeding, but apparently before that appeal was perfected,

---

* The Province originally leased 31 apartments in 1969, which number eventually rose to 37 before declining to 23 and then to the present 16 apartments.

entered into a stipulation, dated December 11, 1989 (the 1989 stipulation), which settled the litigation under the following pertinent terms: the 1988 proceeding was discontinued with prejudice and the appeal withdrawn; the parties would enter into a rent-stabilized lease for the two-year term from October 1, 1988 to September 30, 1990 at a specified rent; and the Province would "provide Owner a list of the present occupants of each of the Subject Apartments."

The Province subsequently delivered to the landlord a "List of Apartment Occupants as of December, 1989" which identified 21 occupants in 16 specified apartments. The parties thereafter executed a number of rent-stabilized renewal leases, the last of which covered the period from October 1, 1996 through September 30, 1998. In May 1998, the current landlord, petitioner 220 West 98 Realty, L.L.C., served a notice of non-renewal of lease and thereafter, in October 1998, after expiration of the final renewal lease, commenced the instant summary holdover proceeding seeking to recover possession of the apartments.

The landlord based its refusal to renew the lease on this Court's decision in *Manocherian v Lenox Hill Hosp.* (229 AD2d 197, *lv denied* 90 NY2d 835 [*Manocherian II*]), in which we held that a corporate tenant is not entitled to a renewal lease under the Rent Stabilization Law unless the lease specifies a particular individual as the occupant of a particular apartment. The Province and WSJC moved, and the landlord cross-moved, for summary judgment and Civil Court, apparently viewing the key issue as whether the Province, or alternatively, WSJC, was the tenant under the lease, subsequently held that *Manocherian II* was not applicable "since the petitioner in word and deed has treated the WSJC as the primary tenant and not as a mere occupant or subtenant of The Province."

Appellate Term modified Civil Court's order and implicitly rejected Civil Court's view that deeming WSJC the tenant renders *Manocherian II* inapplicable. Appellate Term found, however, that the 1989 occupant list which the landlord received pursuant to the 1989 stipulation was sufficient to render *Manocherian II* inapplicable insofar as it specified particular individuals as the occupants of particular apartments. Appellate Term concluded that:

> "To the extent the same occupants remain in possession and continue to utilize the same apartments as their primary residences, the facts have not

changed since the * * * stipulation of settlement. From a practical point of view, landlord should be precluded from relitigating these issues again in this proceeding."

We agree with Appellate Term and affirm.

We must begin our analysis with *Manocherian v Lenox Hill Hosp.* (84 NY2d 385, *cert denied* 514 US 1109 [to be referred to herein as *Manocherian I*]), a 1994 decision in which the Court of Appeals addressed the enactment of chapter 940 of the Laws of 1984 (Chapter 940), which, *inter alia,* amended the Omnibus Housing Act to permit a not-for-profit hospital renting a housing unit for residential use to be deemed a tenant, and amended the Rent Stabilization Law to allow a not-for-profit hospital to sublet housing leased for its employees without the landlord's consent. In *Manocherian I,* the Court of Appeals declared Chapter 940 unconstitutional ab initio, and found the statute to be a regulatory taking which did not advance a legitimate State interest but, rather, merely provided a "valuable perk" for health care workers (*Manocherian v Lenox Hill Hosp.,* 84 NY2d, *supra,* at 396).

As an implication of *Manocherian I,* this Court subsequently held in *Manocherian v Lenox Hill Hosp.* (229 AD2d, *supra,* at 205) that a corporate tenant would be entitled to a renewal lease under the Rent Stabilization Law only "where the lease specifies a particular individual as the occupant *and* no perpetual tenancy is possible * * *." As noted above, the landlord based its refusal to renew the lease on our holding in *Manocherian II.*

In this matter, however, we find, as did Appellate Term, that there is no unconstitutional taking and that the mandate of *Manocherian II,* requiring that there be identifiable individuals in occupancy so that the potential for a perpetual tenancy is avoided, is satisfied. Indeed, the landlord, rather than appeal Civil Court's order in the 1988 summary proceeding, entered into a stipulation with the Province which specifically recognized that the 16 apartments were the primary residences of the occupants. Since the stipulation identifies particular individuals as the occupants of specific apartments, no perpetual tenancy is possible and we perceive no reason to disturb what is clearly a valid, binding agreement between the parties.

Finally, Appellate Term properly remanded the matter to Civil Court for a determination as to which apartments are no longer occupied by the individuals designated pursuant to the 1989 stipulation.

Accordingly, the order of the Appellate Term of the Supreme Court, First Department, entered on or about November 1, 2000, which, in modifying an order of the Civil Court, New York County (Maria Milin, J.), entered on or about August 30, 1999, denied respondents' motion and landlord's cross motion for summary judgment in a holdover proceeding and remanded the matter to the Civil Court for further proceedings, should be affirmed, without costs.

ANDRIAS, BUCKLEY and MARLOW, JJ., concur.

Order of the Appellate Term of the Supreme Court, First Department, entered on or about November 1, 2000, affirmed, without costs.