Fox v 12 E. 88th LLC (2018 NY Slip Op 02289)





Fox v 12 E. 88th LLC


2018 NY Slip Op 02289


Decided on April 3, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 3, 2018

Friedman, J.P., Kahn, Gesmer, Kern, Moulton, JJ.


5200 154841/14

[*1]Barry Fox, et al., Plaintiffs-Appellants-Respondents,
v
12 East 88th LLC, et al., Defendants-Respondents-Appellants.


Emery Celli Brinckerhoff & Abady LLP, New York (Richard D. Emery of counsel), for appellants-respondents.
Rose & Rose, New York (Paul Coppe of counsel), for respondents-appellants.



Order, Supreme Court, New York County (Paul Wooten, J.), entered October 18, 2016, which, to the extent appealed from as limited by the briefs, denied defendants' motion for summary judgment declaring that the subject apartment was deregulated by the 2008 lease renewal, granted plaintiffs' motion for summary judgment declaring in their favor, and declared that the apartment is subject to rent stabilization, denied plaintiffs' motion as to the application of the default formula for determining the regulated rent and calculating overcharge damages, granted defendants' motion for a declaration that the default formula for determining the regulated rent is not applicable, and set the base rent for calculating overcharge damages as the market rate rent being charged in May 2010, denied plaintiffs' motion as to attorneys' fees, and sub silentio denied plaintiffs' motion as to treble damages, reversed, on the law, without costs, as to the declaration that the apartment was not deregulated in 2008, and it is declared that the apartment was deregulated in 2008, and the appeal therefrom otherwise dismissed, as academic.
In 1975, plaintiff Barry Fox leased a rent-stabilized penthouse apartment from defendant Nostra Realty Corp. In 1996, when the neighboring rent-stabilized penthouse apartment became vacant, Fox agreed with Nostra to combine the two units, at his expense, and to enter into a market rate lease. Unbeknownst to Fox, Nostra was receiving J-51 tax benefits in connection with the building at the time the units were combined and purportedly deregulated (see Roberts v Tishman Speyer Props., L.P., 13 NY3d 270 [2009]).
In 2008, at Fox's suggestion, a renewal lease was entered into by plaintiff MBE Ltd., an entity wholly owned by Fox, with the understanding that Fox would continue to occupy the apartment; MBE executed renewal leases for the apartment in 2010 and 2012. Fox has continued to live in the apartment since MBE became the tenant of record. In 2014, defendant 12 East 88th LLC purchased the building and informed Fox that the lease would not be renewed.
Because the 2008 lease, and the subsequent lease renewals, named MBE as the sole tenant and did not identify as the occupant of the apartment a particular individual with a right to demand a renewal lease, Fox is not entitled to the renewal of the lease (see Manocherian v Lenox Hill Hosp., 229 AD2d 197, 205 [1st Dept 1997], lv denied 90 NY2d 835 [1997]; accord 501 E. 87th St. Realty Co. v Ole Pa Enters., 304 AD2d 310 [1st Dept 2003]; Avon Bard Co. v Aquarian Found., 260 AD2d 207 [1st Dept 1999], appeal
dismissed 93 NY2d 998 [1999]).
In Manocherian, this Court established that "a corporation is entitled to a renewal lease where the lease specifies a particular individual as the occupant and no perpetual tenancy is possible" (Manocherian v Lenox Hill Hosp., 229 AD2d at 205). Our subsequent cases have construed the first requirement strictly, denying rent stabilization protections to individual occupants who are not actually identified in an entity's rent stabilized lease (see Avon Bard Co. v Aquarian Found., 260 AD2d at 211 [even where a corporation's rent stabilized lease is [*2]"manifestly for the benefit of" an individual occupant, the individual is not protected by the Rent Stabilization Law if her or she is not designated in the lease [internal quotation marks omitted]; 501 E. 87th St. Realty Co. v Ole Pa Enters., 304 AD2d at 310-311 [same holding, despite individual tenant's residence in the subject apartment for more than 20 years]). Here, Fox is neither a party to nor identified as a tenant in the 2008 lease, and thus ceased to be a tenant under Rent Stabilization Code (RSC)
(9 NYCCR) § 2520.6(d) at that time. Further, he was not identified as an individual occupant in the 2010 or 2012 lease, as required under Manocherian, and is therefore barred from rent stabilization protection under their terms, as well.
Our dissenting colleague's reliance on our decision in Herald Towers LLC v Sun Lord Int. (302 AD2d 306 [1st Dept 2003]) and similar cases (see e.g. WM Wellington, LLC v Grafstein Diamond, Inc. 22 Misc 3d 1123[A], 2009 NY Slip Op 50255[U] [Civ Ct, NY County 2009]) to support an examination of extrinsic evidence showing that the individual tenant not named in the corporate entity's lease was the actual and intended occupant of the apartment, is misplaced. In such cases, summary judgment was denied because there was record evidence that it had been the landlord, and not the individual tenant, who had initiated the change to tenancy by the corporate tenant. Here, however, it is uncontroverted that the substitution of MBE as tenant of record was undertaken at Fox's own instance.
With respect to the second Manocherian requirement, plaintiffs urge that there is no risk of perpetual tenancy because the 2008 tenant information sheet identifies Fox as the "tenant" of the apartment, Fox submitted pet forms to the owner in conjunction with the 2010 and 2012 lease renewals, and it is undisputed that Fox never vacated the apartment. Whether or not these facts are sufficient to satisfy Manocherian's second requirement (cf. 501 East 87th St. Realty Co., 304 AD2d 310 [fact that individual was president of corporate tenant and had occupied apartment for two decades held insufficient]; Avon Bard Co., 260 AD2d 207 [fact that individual was pastor of the church listed as tenant held insufficient]), the fact remains that under our settled precedent, the corporate tenant is only entitled to the protections of rent stabilization if an individual tenant is named in the lease and no perpetual tenancy is created. Thus, the apartment was deregulated in 2008, and plaintiffs have no right to renew the lease.
Plaintiffs are not aided by their reliance on Roberts v Tishman Speyer Props L.P. (13 NY3d 270 [2009], supra). Although a tenant cannot waive rent stabilization coverage where, as here, a building is receiving J-51 tax abatement benefits (id.; RSC § 2520.13), the apartment was no longer subject to rent stabilization protections upon the signing of the 2008 lease. As we explained in Gersten v 56 7th Ave. LLC (88 AD3d 189 [1st Dept 2011], appeal withdrawn 18 NY3d 954 [2012]), "[t]he rent-regulated status of an apartment is a continuous circumstance that remains until different facts or events occur that change the status of the apartment" (id. at 199 [emphasis added]). Here, precisely such an event occurred to change the status of the apartment, in accordance with Manocherian: a high-rent vacancy deregulation occurred when, on May 19, 2008, at Fox's request, a market rate renewal lease was entered into by MBE at $25,000 per month, without Fox being a signatory to the lease. Fox was thereby deemed to have vacated the apartment (see 501 E. 87th St. Realty Co., 304 AD2d at 310-311). From that time onward, Fox ceased being a tenant and no longer had any of the rights to which a rent-stabilized tenant is entitled, and therefore could not have waived them. Thus, the dissent's position that Fox, an attorney, effected an unknowing, and impermissible, waiver of such rights is without basis.
For the same reason, Fox is not entitled to pursue his overcharge claim in this action (see Taylor v 72A Realty Assoc., L.P.) (151 AD3d 95, 102 [1st Dept 2017] ["challenges to the level
of rent charged must be made within [the] four-year limitations period . . . immediately preceding the filing of a complaint"].
All concur except Gesmer, J. who dissents in a memorandum as follows:




GESMER, J. (dissenting)


As the majority implicitly finds, plaintiff Barry Fox did not know in 2008 that he was [*3]entitled to the protections of rent stabilization. Consequently, he did not know that his execution of a renewal lease in 2008, which was in his corporation's name and did not designate him as the sole occupant, would make him ineligible to receive a subsequent rent stabilized lease renewal. Therefore, I cannot agree with the majority that Fox's execution of a lease in his corporate name at a time when he did not know he was entitled to the protections of the rent stabilization law constitutes a waiver of those rights, and I respectfully dissent.
I agree with the majority's implicit finding that Fox continued to be a rent stabilized tenant after 1996. When he signed that lease, his apartment was subject to rent stabilization because his landlord was receiving J-51 benefits (Roberts v Tishman Speyer Props., L.P., 13 NY3d 270 [2009]). Accordingly, the language purporting to effectuate a waiver, found in the 1996 lease and his subsequent leases, is ineffective, since a tenant cannot waive rent stabilization coverage (Rent Stabilization Code [9 NYCRR] § 2520.13; see also Drucker v Mauro, 30 AD3d 37 [1st Dept 2006] [agreement waiving rent stabilization void, even where beneficial to tenant], lv dismissed, 7 NY3d 844 [2006]), and we have previously found this legislative mandate to be "sacrosanct" (Gersten v 56 7th Ave. LLC, 88 AD3d 189, 199 [1st Dept 2011], appeal withdrawn, 18 NY3d 954 [2012]).
Because Fox did not know in 2008 that his landlord was receiving J-51 benefits, which rendered the waiver provision in the 1996 lease ineffective, he did not know that he was entitled to the protections of rent stabilization [FN1]. Had he known that, he would have had the opportunity to consult with a lawyer before executing a renewal lease in his corporate name. Had he done so, he would probably have been advised that he would be jeopardizing his rent stabilization rights unless the lease specifically stated that he would be the sole occupant (see Manocherian v Lenox Hill Hosp., 229 AD2d 197, 205 [1st Dept 1997] [a corporation is entitled to a renewal lease where it "specifies a particular individual as the occupant and no perpetual tenancy is possible"], lv denied, 90 NY2d 835 [1997]). Consequently, I would find that the 2008 lease should not operate to prohibit the issuance of a renewal lease, either in Fox's name or in the name of his corporation and naming him as the intended occupant, because where, as here, a tenant has been led to believe, erroneously, that his apartment is no longer covered by rent stabilization, he should not be penalized for acting on that improper belief. More specifically, it is unfair to find that, by executing a lease in the name of his corporation, he waived rent stabilization protections he did not even know he had at the time. If his rent stabilized tenancy is now terminated solely by reason of his having signed the 2008 lease on behalf of the corporation of which he was the sole member and with the unwritten understanding with his landlord that he was the intended occupant of the apartment, we are permitting him to waive the protections of rent stabilization based on his mistaken belief that rent stabilization no longer applied. Without the knowledge that it did, he was denied the options to which he was entitled under rent stabilization. I am concerned that the majority ruling in this case essentially finds that the rule established in Manocherian trumps the Rent Stabilization Code's heretofore "sacrosanct" mandate prohibiting waiver of rent stabilization, and I therefore cannot join it.
Manocherian and its progeny cited by defendants in their appellate brief (501 E. 87th St. Realty Co., LLC v Ole Pa Enters., 304 AD2d 310 [1st Dept 2003]; Avon Bard Co. v Aquarian Found., 260 AD2d 207 [1st Dept 1999], appeal dismissed 93 NY2d 998 [1999]) are distinguishable from this case in two respects. First, those cases did not involve a tenant who [*4]was unaware of the rent stabilized status of the apartment and elected to enter into a free market renewal lease in a corporate name without expressly identifying an intended occupant.
Second, here, unlike in those cases, there is no dispute that it was the intent of both parties to the 2008 lease that MBE could only be the tenant for so long as Fox was the sole member and he continued to reside there, fulfilling both Manocherian requirements of an intended occupant and a non-perpetual tenancy. Indeed, the affidavit by defendant Nostra's co-president, Gaby Lehrer, in support of defendants' summary judgment motion, explicitly states that "no promises or representations" were made outside of the terms of the 1996 written lease, but makes no such representation as to the 2008 lease [FN2]. Defendants also do not
dispute that, prior to entering into the 2008 lease, the landlord required that Fox provide proof that he was MBE's sole member, that Fox was listed as the tenant on the tenant information sheets completed in conjunction with the lease, that letters enclosing the 2008 and subsequent leases were addressed to Fox personally, and that the pet riders to the 2010 and 2012 leases listed Fox's dogs.
While defendants argue that Manocherian prohibits courts from looking at extrinsic evidence to determine the existence of an intended occupant, in fact this Court has previously declined to grant summary judgment where, as here, facts extrinsic to the lease raise a question as to whether the corporate officer occupying the apartment leased in the name of a corporation was entitled to independent tenancy rights in the rent stabilized apartment (see Herald Towers LLC v Sun Lord Intl., 302 AD2d 306 [1st Dept 2003]; see also WM Wellington, LLC v Grafstein Diamond, Inc., 22 Misc 3d 1123[A], 2009 NY Slip Op 50255[u] [Civ Ct, NY County 2009]). My colleagues in the majority would distinguish those cases because the landlord initiated the change from an individual to a corporate tenancy. In my view, Fox's landlord's having withheld the crucial information from him that could have put him on notice that he was entitled to rent stabilization coverage at least raises a question of fact as to whether the landlord effectively initiated the lease change in this case.
Accordingly, I would affirm the motion court's holding that plaintiffs are entitled to a declaration that the apartment is subject to rent stabilization.
In addition, I would find that further proceedings are necessary to determine plaintiffs' overcharge claim. The motion court improperly used the market rate rent charged four years prior to the commencement of this action, citing East W. Renovating Co. v New York State Div. of Hous. & Community Renewal (16 AD3d 166 [1st Dept 2005]). However, this Court recently held, in accordance with our earlier holdings, that where an apartment has been improperly deregulated during a time when the owner was receiving J-51 benefits, the landlord is required to prove what the legally regulated rent should have been on the base date four years prior to the tenant's overcharge claim (see Taylor v 72A Realty Assoc., L.P., 151 AD3d 95, 105-106 [1st Dept 2017]). Accordingly, I would remand for further proceedings to establish the amount of any overcharge pursuant to Taylor.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 3, 2018
CLERK



Footnotes

Footnote 1:It is undisputed that Fox did not learn that the landlord was receiving J-51 benefits until in or about 2013 when he consulted counsel after the current owner advised him that it would not renew his lease. The majority notes that Fox is an attorney. However, there is no suggestion that he had any expertise in landlord-tenant law, much less the highly specialized area of rent stabilization. Moreover, even if he had such expertise, without this crucial information, his legal skills would have been of little use.

Footnote 2:Defendants did not submit an affidavit by a person with knowledge of the relevant facts in reply on their motion, or in opposition to plaintiffs' cross motion for summary judgment.