■ AVON BARD Co., Appellant, v AQUARIAN FOUNDATION, Respondent. [688 NYS2d 514] —Orders of the Appellate Term of the Supreme Court, First Department, entered November 26, 1997, which affirmed two orders of the Civil Court, New York County (Howard Malatzky, J.), entered on or about June 10, 1997 and June 12, 1997, respectively, granting respondent-tenant Aquarian Foundation's motions to dismiss the holdover petitions, unanimously reversed, on the law, without costs, the petitions reinstated, and judgments of possession awarded to petitioner.

Plaintiff landlord seeks to recover possession of the subject premises, two adjacent residential apartments subject to rent stabilization. Civil Court (Howard Malatzky, J.) found various defects in the non-renewal notice, which it denominated "fatal infirmities", and dismissed the petitions. Appellate Term affirmed the ruling, but on different grounds, finding that "it is manifest that the apartment [*sic*] at issue in this proceeding was rented for the benefit of an identifiable individual, Reverend Jenne". Petitioner landlord appeals from the orders of Appellate Term based upon this Court's ruling in *Manocherian v Lenox Hill Hosp.* (229 AD2d 197, *lv denied* 90 NY2d 835).

As in the *Manocherian* case (*supra*), the lease at issue is held in a corporate name, specifically, that of respondent Aquarian Foundation which, the record reveals, is a religious corporation organized under article 10 of the Religious Corpora-

tions Law. Also, as in *Manocherian*, plaintiff served the corporation with notice that the lease would not be renewed on the ground that the corporation does not occupy the subject premises as its primary residence (*supra*, at 199, 205). Finally, the lease fails to designate any individuals, or even a class of individuals, who are to reside in the subject premises. Relying on this Court's decision in *Matter of Cale Dev. Co. v Conciliation & Appeals Bd.* (94 AD2d 229, *affd* 61 NY2d 976) and its progeny, the tenant argues that the individual respondent, Reverend Allen Jenne, should be deemed the primary tenant under the lease. Therefore, tenant asserts, Reverend Jenne is entitled to the protection of the Rent Stabilization Law of 1969 (Administrative Code of City of NY, tit 26, ch 4), including the right to a renewal lease in his own name.

The tenant's argument is devoid of merit. As an initial consideration, "[l]ease interpretation is subject to the same rules of construction as are applicable to other agreements" (*Matter of Cale Dev. Co. v Conciliation & Appeals Bd., supra*, at 234, citing *Backer Mgt. Corp. v Acme Quilting Co.*, 46 NY2d 211, 217). Unless grounds exist to rescind or reform the lease, the rights and obligations of the parties are determined by reference to the instrument. As this Court pointed out in *Hughes v Lenox Hill Hosp.* (226 AD2d 4, 6): "the protection afforded by the rent regulations is expressly limited by the governing statutes, which are universal in exempting from their ambit dwelling units 'not occupied by the tenant, not including subtenants or occupants, as his primary residence' (Administrative Code of City of NY § 26-504 [a] [1] [f]) [Rent Stabilization Law]; *see also*, McKinney's Uncons Laws of NY § 8605 [Local Emergency Housing Rent Control Act § 5; L 1962, ch 21, § 1, as amended]; New York City Rent and Rehabilitation Law [Administrative Code] § 26-403 [e] [2] [i] [10]; *Friesch-Groningsche Hypotheekbank Realty Credit Corp. v Slabakis*, 215 AD2d 154, 155)." Under the rent stabilization scheme, only the person designated on the lease is entitled to renewal. As the Court of Appeals stated in *Sullivan v Brevard Assocs.* (66 NY2d 489, 493), "there is conspicuously absent from the Rent Stabilization Law any definition of the term 'tenant', leaving only the lease definition of tenant." The Court continued (at 494): "The Rent Stabilization Law, moreover, sets forth its own specific scheme of regulation, different from rent control. Rent stabilization protects only the primary residence of the tenant. It expressly excludes dwelling units 'not occupied by the tenant, not including subtenants or occupants, as his primary residence,' and a landlord may seek 'to recover possession on the ground that a housing accommodation is not occupied by

the tenant as his primary residence' (Administrative Code § YY51-3.0 [a] [1] [f] [now § 26-504 (a) (1) (f)])". Based upon these rulings, it is clear that the summary proceeding commenced by the landlord is properly predicated on non-primary residence grounds.

The issue before this Court on appeal is whether there is any construction of the lease held by the religious corporation that would permit the individual respondent to demand its renewal in his own name. This question is not distinguishable from the issue before the Court in *Manocherian (supra)*: whether the Court of Appeals' decision in that case limits *Matter of Cale Dev. Co. v Conciliation & Appeals Bd. (supra)* so as to preclude creation of a primary tenancy in the occupant of an apartment rented in a corporate name.

In construing the Court of Appeals holding in *Manocherian v Lenox Hill Hosp.* (84 NY2d 385), this Court (Williams, J.) noted that " 'to qualify under the primary residence test, there must be an identifiable individual who has the right to demand a renewal lease' " (*Manocherian v Lenox Hill Hosp., supra,* 229 AD2d, at 204, quoting *Koenig v Jewish Child Care Assn.,* 67 NY2d 955, 958 [Titone, J., dissenting]). The Court went on to note (at 205) that the Court of Appeals' ruling in *Manocherian* had the effect of limiting the position taken by this Court in *Cale* that a corporation is entitled to renewal of a lease providing for occupancy by a designated class of individuals, stating, "*Manocherian* 'rolls back' the *Cale* 'doctrine' to its limited holding: that a corporation is entitled to a renewal lease where the lease specifies a particular individual as the occupant and no perpetual tenancy is possible" (*supra,* at 205).

In the matter under review, the religious corporation is identified as the tenant. While the printed form recites that occupancy is limited to "Tenant and the immediate family of Tenant", the lease does not specify any individual as occupant. Thus, the first criterion of the test set forth in *Manocherian* (229 AD2d, *supra,* at 205) is not satisfied. Granting that the contiguous apartments in question have only been occupied by Reverend Allen Jenne and his family for the last 17 years, as Appellate Term found, there is no assurance that one or both of the units will not be occupied by other members of the church at some future time. The certificate of incorporation provides for the election of three trustees and proclaims, "It is the intention of this church that it shall remain perpetual." There is no assurance that another trustee will not assume occupancy of all or a portion of the leased premises upon the removal of some or all of the Jenne family (*see,* Religious Corporations

Law §§ 5, 200). Thus, the corporate privilege of using the premises to house officers and employees of the church will "last for as long as its unilaterally controlled corporate existence" (*Manocherian v Lenox Hill Hosp.*, 84 NY2d, *supra*, at 391), and the second criterion of the test enunciated by this Court is also not satisfied.

Finally, the notice served upon the tenant sufficiently states the grounds upon which this proceeding is based. As we stated in *Hughes v Lenox Hill Hosp.* (*supra*, at 17), "the appropriate standard for assessment of the adequacy of notice is one of reasonableness in view of all attendant circumstances." That the landlord misconstrued the tenant's status as a registered foundation not conducting business within the State does not render the notice unreasonable. The particular corporate form of the organization is a matter peculiarly within the knowledge of the tenant and is not readily ascertainable by the landlord (*supra*; *see also*, *Cox v J. D. Realty Assocs.*, 217 AD2d 179, 183-184). In addition, the notice recites that the landlord's allegations are based upon its search of New York State tax records, the accuracy of which is not disputed. Indeed, in his affidavit in support of the motion to dismiss the petition, Reverend Jenne confirms that "Aquarian Foundation is a church and not a charitable entity; does not file New York State Tax returns and is authorized to conduct activities in New York pursuant to its Certificate of Incorporation." Respondent does not set forth any material allegations within petitioner's knowledge that it failed to include in the notice (*Hughes v Lenox Hill Hosp.*, *supra*, at 18). Neither does respondent allege that it was misled as to the nature of this proceeding nor that it was prejudiced in responding to the landlord's petition.

Insofar as pertinent, the notice received by the tenant states that the grounds for the proceeding are that the premises are not occupied "as your primary residence." It further recites that the landlord "reasonably believes that * * * Aquarian Foundation, being a charitable entity, does not and cannot maintain the referenced rent stabilized apartment as a primary residence." While Reverend Jenne's attempt to distance his church from a "charitable entity" might be remarkable for its forthrightness, it does not subvert the law's general categorization of churches as eleemosynary institutions (*see*, *e.g.*, *Knight v Presbytery of W. N. Y.*, 18 NY2d 868; *Cornerstone Baptist Church v Rent Stabilization Assn.*, 55 AD2d 952). The notice accurately reflects the law of this State that a corporation, religious or otherwise, cannot be regarded as a primary resident of a rent stabilized apartment without impermissibly

infringing upon constitutionally protected property interests (*Manocherian v Lenox Hill Hosp.*, 84 NY2d, *supra*, at 391-393). Thus, there is no merit to the tenant's allegation that it has not been given reasonable notice of the grounds upon which the proceeding is based (Rent Stabilization Code [9 NYCRR] § 2524.2 [b]; § 2524.4 [c]).

The Court of Appeals nullified the Legislature's effort to confer a "special fringe benefit" on employees of not-for-profit hospitals, ruling it to be an unconstitutional taking of property (*Manocherian v Lenox Hill Hosp.*, 84 NY2d, *supra*, at 396). Respondent tenant has advanced no compelling ground why this Court should fashion a similar exception to the primary residence requirement for the benefit of the trustees of this not-for-profit religious corporation. Respondent cites no authority for its assertion that "underlying policy considerations in this area of law would protect respondent Reverend Allen Jenne and his family from eviction on non-primary residence grounds". Policy was expressly rejected by the Court of Appeals as a basis for decision in this area, stating, "Whatever consequences flow from our ruling, then, are the product of the law itself and its proper adjudication, not a societal or policy preference of our making" (*Manocherian v Lenox Hill Hosp.*, 84 NY2d, *supra*, at 395). The adverse consequences to occupants of rent stabilized housing accommodations affected by the ruling in *Manocherian* (84 NY2d 385, *supra*) do not outweigh the constitutional protection against "the functional equivalent of divestitures from landowners of reversionary rights to their properties without just compensation and due process" (*Rent Stabilization Assn. v Higgins*, 83 NY2d 156, 176 [Bellacosa, J., concurring], *cert denied* 512 US 1213).

Appellate Term's construction of the lease as manifestly "for the benefit of Rev. Jenne" is not supportable. This interpretation would render nugatory the express statutory exclusion of "subtenants and occupants" from those persons entitled to the protection of the Rent Stabilization Law (Administrative Code § 26-504 [a] [1] [f]). Moreover, it is similarly manifest that the leases at issue in *Manocherian (supra)* were for the benefit of hospital personnel, some of whom had occupied their apartments for long periods. Appellate Term's observation does not remedy the omission to designate, in the lease instrument, an individual who is to occupy the premises. Finally, neither the court nor the tenant sets forth any equitable ground, such as mutual mistake or fraudulent misrepresentation, to warrant reformation of the lease to substitute Reverend Jenne as the tenant entitled to possession (*Gaylords Natl. Corp. v Arlen*

*Realty & Dev. Co.*, 112 AD2d 93; *Backer Mgt. Corp. v Acme Quilting Co.*, 55 AD2d 535, *affd* 46 NY2d 211).

The record before this Court does not disclose what advantages Reverend Jenne, as trustee and "local spiritual leader" of the Aquarian Foundation, has enjoyed by taking occupancy of the subject premises under the leasehold held by the corporation. However, having freely established this unconventional relationship between the landlord and the foundation over which he presides, Reverend Jenne is obliged to accept any disadvantages arising from the arrangement along with any benefits. Concur—Rosenberger, J. P., Nardelli, Wallach and Rubin, JJ.