OPINION OF THE COURT
Nicholas Figueroa, J.
On September 27, 1974, Johnny Winter signed a three-year *797 lease for a rent-stabilized penthouse at D (PHD) 501 East 87th Street, New York, New York. Upon expiration of this lease, a new one-year lease was signed which substituted Winter’s corporation, Ole Pa Enterprises Inc. (Ole Pa), as the corporate tenant. This corporate lease was followed by 10 consecutive two-year lease renewals, each naming Ole Pa as the corporate tenant. Upon expiration of the last lease, on July 31, 1998 the landlord duly served Johnny Winter a notice of nonrenewal of lease, claiming that PHD was not his primary residence.
Statutorily, the tenant of a rent-stabilized apartment must be offered a renewal lease. To qualify, the tenant must occupy the apartment as a primary residence. In the past, corporations would lease a rent-stabilized apartment in order to provide suitable living quarters for its corporate officers or other employees without specifying the names of these individuals in the lease. Under the law, such leases did not confer lease renewal rights on the corporation. This is because a corporation cannot claim the apartment as its primary residence, a prerequisite for protection under the Rent Stabilization Law, because as an incarnate artificial person, it is incapable of maintaining a residence. Such corporate involvement also runs counter to the purpose of the 1969 Rent Stabilization Law (Administrative Code of City of NY, tit 26, ch 4), to protect individual dwellers, not corporations, from hardship due to unwarranted and abnormal rent increases in a tight rental market (Rent Stabilization Law § 26-501; Manocherian v Lenox Hill Hosp., 84 NY2d 385, 396, cert denied 514 US 1109; see Matter of Cale Dev. Co. v Conciliation & Appeals Bd., 94 AD2d 229, affd 61 NY2d 976; Matter of Colin v Altman, 39 AD2d 200).
This rationale is buttressed by judicial rulings that a corporate lease unconstitutionally empowers the corporate tenant to hold a rent-controlled apartment for the duration of its life, which being perpetual, has the effect of depriving the owner of reversionary rights to his property without due process. (Manocherian, 84 NY2d at 391-393.) Therefore, the established rule is that a “corporation * * * cannot be regarded as a primary resident of a rent stabilized apartment.” (Avon Bard Co. v Aquarian Found., 260 AD2d 207, 210.)
A corporation’s subtenants fare no better than a corporation, they likewise are barred from claiming an apartment as a primary residence by virtue of Rent Stabilization Law § 26-504 (a) (1) (f), which specifically exempts from lease renewal those dwelling units “not occupied by the tenant, not including sub *798 tenants or occupants as his primary residence.” This exempts a subtenant under a corporate lease, such as Johnny Winter, and subtenants in general, from the protection of rent stabilization. (Sullivan v Brevard Assoc., 66 NY2d 489.) Accordingly, only the individual (natural person) named as the tenant in a lease who occupies a rent-stabilized apartment as a primary residence can qualify for automatic renewal of the lease.
For renewal rights to attach, a corporate lease must identify the individual for whose benefit the lease is signed. Accordingly, with respect to a rent-stabilized apartment under a corporate lease, the occupant in order to qualify under the primary residence test, “must be an identifiable individual who has the right to demand a renewal lease.” (Manocherian, 229 AD2d at 204, quoting Koenig v Jewish Child Care Assn. of N.Y., 67 NY2d 955, 958 [Titone, J., dissenting].) In other words, the intended occupant of the apartment must be specifically named as such in the lease.
If an occupant’s designation is too broad, because it allows a series of successive occupants, it thereby may create the possibility that the corporate tenancy would “last for as long as its unilaterally controlled corporate existence.” (Avon Bard, 260 AD2d at 210.) In which case, to avoid this anomalous result, neither the corporate tenant nor its subtenant is entitled to lease renewal.
The subtenant herein asserts a waiver by the landlord of the express provisions of the lease. This position, however, is contrary to the rule that “Coverage under a rent regulatory scheme is a matter of statutory right and cannot be created by waiver or estoppel.” (512 E. 11th St. HDFC v Grimmet, 148 Misc 2d 971, revd on other grounds 181 AD2d 488 [citation omitted].) Even where a tenant moves into a rent-stabilized apartment in reliance on the landlord’s explicit promise that he will be given a renewal lease, no waiver results. (Gregory v Colonial DPC Corp. Ill, 234 AD2d 419.) Moreover, “[a] waiver is the voluntary abandonment of a known right.” (Jefpaul Garage Corp. v Presbyterian Hosp., 61 NY2d 442, 446.)
Lastly, the subtenant claims the corporate lease itself is invalid ab initio because it is in direct violation of Rent Stabilization Code (9 NYCRR) § 2520.13 which states in pertinent part that “[a]n agreement by the tenant to waive the benefit of any provision of the RSL or the Code is void * * * .” This mandates that a renewal lease must be offered on the same terms and conditions as the expiring lease with no “give backs” by the *799 tenant. (East Eleventh St. Assoc. v Breslow, 174 Misc 2d 994, affd 256 AD2d 110.) Consequently, the subtenant argues, the lease creating a corporate tenancy, when he should have automatically been offered a renewal of the lease in his own name, constituted an unlawful waiver under the Code of his rights to a renewal lease.
The issue is whether Johnny Winter, now the subtenant, voluntarily relinquished his rights to renewal under his original rent-stabilized lease. There is no evidence that the landlord offered any inducement for the corporate substitution, or other improper machinations by the landlord to remove PHD from the strictures of rent stabilization. Under these circumstances the corporate lease must be deemed to have been created at the behest of Winter, the corporation’s principal shareholder.
This court finds the corporate lease fails to designate an identifiable individual as the intended occupant of PHD. Consequently, neither the corporate nor individual defendant were primary residents as required under the Rent Stabilization Law, and therefore were not entitled to a renewal lease. Subtenant, Johnny Winter, is therefore liable to the landlord for the fair use and occupancy of the apartment for the holdover period.
[Portions of opinion omitted for purposes of publication.]