OPINION OF THE COURT
Tom, J.P
Respondent tenant’s relocation to California for a period of nearly two years to care for her elderly parents constitutes a reasonable ground for her temporary absence from her rent-stabilized apartment, supporting Civil Court’s decision that the premises continued to be maintained as tenant’s primary residence. In view of the liberal discovery available in a nonprimary residence proceeding, petitioner landlord had the means to seek relevant proof regarding tenant’s parents’ infirmities, and the absence of such evidence is not a basis for disturbing the court’s findings.
Tenant Charlene Lee occupies the subject apartment under a rent-stabilized lease entered into in September 1997 and periodically renewed thereafter. By timely notice, landlord terminated *20 the tenancy effective October 31, 2002 on the ground that tenant had relocated to California, that she occupied the apartment less than 180 days a year and that her daughter, Cindy, was occupying the premises. When tenant failed to surrender possession, this holdover proceeding ensued. In her answer, tenant denied landlord’s allegations, asserted that Cindy was entitled to succession rights and sought attorneys’ fees. Landlord conducted examinations before trial of both occupants of the apartment, during which tenant explained that she went to California to care for her ailing parents and that her daughter remained in the apartment to complete her studies at Stuyvesant High School, from which she graduated in 2003.
After trial, Civil Court dismissed the petition and awarded tenant attorneys’ fees, finding that the evidence established that tenant had an ongoing substantial physical nexus to the New York apartment and a valid reason for her temporary relocation that did not, in and of itself, mandate a finding of nonprimary residence.
Landlord appealed to Appellate Term from the order issued after trial, the judgment on legal fees and the denial of landlord’s motion for a new hearing on fees. Appellate Term affirmed the dismissal of the holdover proceeding and modified the fee award, revising it downward to $34,053 without elaboration (18 Mise 3d 98 [2007]). A dissenting Justice expressed dismay that tenant had left Cindy alone in New York, finding tenant’s explanation for her absence from the premises to be pretextual and undertaken to obtain succession rights for her daughter.
Landlord appealed to this Court by permission of Appellate Term, asserting that tenant’s extended absence does not fall into any recognized exception to the requirement that she use the leased premises as her primary residence. Landlord argues that tenant failed to establish that the care she claims to have provided to her parents was required by any demonstrated medical condition, that her explanation for her absence was pretextual, and that the award for tenant’s attorneys’ fees, even as reduced, was excessive.
The exemption from statutory protection for dwelling units not used by the tenant as a primary residence is a universal feature of the rent regulatory framework (see Avon Bard Co. v Aquarian Found., 260 AD2d 207, 208 [1999], appeal dismissed 93 NY2d 998 [1999]). Thus, the governing statute provides that a landlord may recover possession of a rent-stabilized apart *21 ment if it “is not occupied by the tenant ... as his or her primary residence” (Rent Stabilization Code [9 NYCRR] § 2524.4 [c]). “[P]rimary residence” is judicially construed as “ ‘an ongoing, substantial, physical nexus with the . . . premises for actual living purposes’ ” (Katz Park Ave. Corp. v Jagger, 11 NY3d 314, 317 [2008], quoting Emay Props. Corp. v Norton, 136 Misc 2d 127, 129 [1987]). Although the statutes do not define “primary residence,” the Rent Stabilization Code does provide that “no single factor shall be solely determinative,” and lists “evidence which may be considered” in making the determination (Rent Stabilization Code [9 NYCRR] § 2520.6 [u]). Rent Stabilization Code § 2520.6 (u) (3) refers to the safe harbor protection of section 2523.5 (b) (2) against loss of primary residence by reason of absence due to certain conditions such as active military duty, full time studies or hospitalization, plus “other reasonable grounds.” Thus, the Code allows the court to apply the flexible definition of section 2520.6 (u) or the “other reasonable grounds” clause of section 2523.5 (b) (2) in determining primary residency. A tenant’s provision of medical care to another person is not listed among the excusable factors (Rent Stabilization Code [9 NYCRR] § 2523.5 [b] [2]). Hence, to be considered a protected absence, it must come within the ambit of the statutory protection afforded to “other reasonable grounds” for alternative residence.
Whether a temporary absence to provide medical care to others constitutes a reasonable ground for residing elsewhere, thereby precluding a finding that a rent-stabilized primary residence has been abandoned, is a question that has not been decided by this Court. However, Appellate Term has ruled that a temporary relocation to care for an infirm parent does not compel a finding that a rent-stabilized apartment is not being used as a primary residence (see e.g. Hudsoncliff Bldg. Co. v Houpouridou, 22 Misc 3d 52, 53 [2008] [protracted absence to care for bedridden mother “in and of itself does not mandate a finding of nonprimary residence”]). In that case, “The trial evidence established that while tenant temporarily relocated to care for her mother, she maintained an ongoing physical nexus to the subject apartment, returning for brief intervals, keeping her furniture and personal belongings in the apartment, and receiving mail there” (id.).
In the matter at bar, tenant maintained at least this nexus with the subject premises and, as noted by Civil Court, “left behind the most important person in her life,” her daughter, *22 then 16 years old. As this Court has noted, a reviewing court is obliged to defer to the findings of the trial court “unless it is obvious that the court’s conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses” (Claridge Gardens v Menotti, 160 AD2d 544, 545 [1990]). Civil Court’s findings are amply supported by record evidence and will not be disturbed.
At trial, the building superintendent testified that he saw tenant only infrequently in 2001 and 2002 but regularly saw Cindy at the premises. Tenant testified that she left her position as a nurse at New York University Medical Center to provide regular care to her ailing parents in California on a daily basis from the spring of 2001 to December 2002. She explained that her father was almost 90 years old and suffered from various systemic conditions, including lupus, hypertension, a herniated lumbar disc, lumbago, allergies and hearing loss, and that her mother, who was then recovering from knee surgery, was physically incapable of caring for her husband. Tenant tended to her parents’ health needs by administering medication, checking their vital signs and managing their daily personal care. She also took her parents, who speak Mandarin, to medical appointments where, due to her proficiency in both English and Mandarin, she could facilitate communications between them and their physicians.
Tenant obtained employment doing research while in California to financially support herself and her daughter back in New York. She explained her need to obtain a California driver’s license during her temporary stay in the state so she could commute to her job and take her parents to their doctors. Tenant explained that she never rented or owned any realty in California but had lived in makeshift quarters during her temporary stay there, first in a residence owned by her sister and brother-in-law and later at a friend’s house. Her sister lived near her parents but could not take care of them due to the demands of her job. Tenant explained that she did not live with her parents on a full-time basis since they lived in a tiny one-bedroom unit in a senior care facility, and her residence there would have violated the facility’s rules. As to taxes, tenant listed the Manhattan apartment as her residence in connection with the returns filed for two of the three years provided. She never voted in California, maintained bank accounts in New York and provided all financial support for her daughter in New York. *23 When her parents’ conditions stabilized in late 2002, tenant returned to New York.
While tenant was in California, Cindy remained in the apartment while attending Stuyvesant High School, maintaining a perfect attendance record, graduating with a 3.9 grade point average and going on to attend Columbia University’s Barnard College. Tenant returned to the apartment once every few months (staying between two and five weeks), maintained bank accounts listing the apartment as her residence, kept her furnishings and personal possessions there, and maintained the utility accounts at the premises.
The evidence presented in this case supports the trial court’s findings that tenant maintained an ongoing substantial physical nexus to the New York apartment and that she did not abandon the subject stabilized premises but maintained it as her primary residence while she was temporarily in California caring for her infirm elderly parents.
The absence of medical and testimonial proof of the nature of the maladies afflicting tenant’s parents does not support an adverse inference that their alleged infirmities were merely a pretext to excuse tenant’s absence from the rent-stabilized apartment. While information concerning the diseases or conditions for which they were treated is protected by the physician-patient privilege (CPLR 4504), the fact of medical treatment, including the frequency and dates thereof, is not (see Hughson v St. Francis Hosp. of Port Jervis, 93 AD2d 491, 499 [1983]). Liberal discovery is provided to a landlord in a nonprimary residence proceeding (Cox v J.D. Realty Assoc., 217 AD2d 179, 183-184 [1995]), and tenant’s disclosure, during her pretrial deposition, that she went to California “to care for my very, very sick father” afforded landlord the opportunity to inquire further and to conduct such additional discovery as it deemed advisable. Having thus been put on notice of the reason for tenant’s temporary relocation to California, landlord bears sole responsibility for its failure to make use of the available discovery devices, and its appellate contention that the trial court erred when it “accepted this newly interjected defense” is wholly devoid of merit. In any event, the quantum of proof adduced by tenant merely presents an issue in respect of the weight, not the sufficiency, of the evidence for resolution by the trial court. Tenant’s testimony concerning her parents’ ailments is uncontroverted, and there is no basis for disturbing Civil Court’s decision.
*24 Finally, while not every parent faced with the unenviable choice of remaining in New York to care for a teenaged daughter or going to California to care for aged and infirm parents would choose temporary relocation, that choice was tenant’s to make. While the propriety of her decision is not material to a determination of the merits of this case, we note that tenant’s confidence in her daughter’s maturity was well founded, as demonstrated by Cindy’s perfect school attendance record and her high academic achievements.
As to attorneys’ fees, the amount awarded is a matter of discretion that should not be disturbed absent an abuse thereof (11 Park Place Assoc. v Barnes, 220 AD2d 339 [1995]; see also DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]). As this Court stated in Jordan v Freeman (40 AD2d 656, 656 [1972]), “The relevant factors in the determination of the value of legal services are the nature and extent of the services, the actual time spent, the necessity therefor, the nature of the issues involved, the professional standing of counsel, and the results achieved.” Civil Court conducted an independent evaluation of the factors bearing on counsel’s fee request of $43,188.01, finding that it “on the whole was reasonable and adequate.” After deducting $4,134 for some duplicated efforts, the court awarded $39,053. Appellate Term further reduced the fee award by $5,000 to $34,053.
Landlord maintains that the award, even as reduced, remains excessive, contending that it does not comport with the amounts invoiced, that seven associates worked on the case with each presumably having to gain familiarity with the file, that the firm double-billed by assigning two attorneys to the trial, and that the lead counsel’s hourly rate was excessive and unreasonable. However, tenant presented invoices totaling $37,704.68. Civil Court approved as reasonable a capped rate for the lead attorney that it reduced from $350 per hour to $325 per hour. The record reflects that three associates assumed primary responsibility for the matter and that the other four billed a mere 8.45 hours for undertaking specific and limited tasks. To the extent any of the work was redundant, as landlord claims, we note that Civil Court had already reduced the amount sought and that Appellate Term further reduced the award. As to landlord’s objection to some of the motion practice, particularly tenant’s unsuccessful summary judgment motion, an award of attorneys’ fees does not require success at all stages of the litigation, only that “the claimant must simply be the prevailing *25 party on the central claims advanced, and receive substantial relief in consequence thereof’ (Board of Mgrs. of 55 Walker St. Condominium v Walker St., 6 AD3d 279, 280 [2004]).
The findings of a trial court should not be disturbed where it has “considered the relevant factors in determining reasonable attorney fees . . . and [its] findings are supported by the record” (1050 Tenants Corp. v Lapidas, 52 AD3d 248 [2008]). Civil Court’s award of legal fees to tenant has ample record support, and landlord has asserted no basis upon which the award, as reduced by the Appellate Term, should be vacated or reduced.
Accordingly, the order of the Appellate Term of the Supreme Court of the State of New York, First Department, entered December 28, 2007, affirming (1) an order of the Civil Court, New York County (Kevin C. McClanahan, J.), entered December 22, 2005, after a nonjury trial, which dismissed the petition in a primary holdover proceeding, and (2) an order of the same court and Judge, entered on or about March 27, 2006, which denied petitioner’s motion to vacate the attorneys’ fees award, and modifying a judgment of the same court and Judge, entered March 2, 2006, which had awarded respondent tenant attorneys’ fees of $39,053, to the extent of reducing the award to $34,053, should be affirmed, without costs.
Friedman, Catterson, Moskowitz and Renwick, JJ., concur.
Order of the Appellate Term of the Supreme Court of the State of New York, First Department, entered December 28, 2007, affirming (1) an order of the Civil Court, New York County, entered December 22, 2005, and (2) an order of the same court, entered on or about March 27, 2006, and modifying a judgment of March 2, 2006, affirmed, without costs.